## MARKS vs. THE STATE.

[INDICTMENT FOR SETTING UP, OR BEING CONCERNED IN CARRYING ON A LOT-
TERY WITHOUT LEGISLATIVE AUTHORITY, &C.]

1. *Tuskaloosa Scientific and Art Association, what charter of, does not au-
thorize.*—The Tuskaloosa Scientific and Art Association is not author-
ized by its charter to distribute awards or prizes of *money* by lot. (PE-
TERS, J., *dissenting.*)
2. *Same.*—If the provision in said charter for the payment of money in
lieu of the article drawn, when not worth the value annexed in the
published list, is used as a subterfuge for distributing money, the par-
ties concerned are guilty of setting up and carrying on a lottery with-
out the legislative authority of the State. (PETERS, J., *dissenting.*)
3. *Same.*—To convict a party of being so concerned, it is not necessary
to prove that he himself sold any lottery tickets.
4. *Lotteries; what not authorized by.*—The act of December 31st, 1868, to
regulate lotteries, does not authorize any lottery; nor does the revenue
law which imposes a tax on them.

APPEAL from the City Court of Mobile.
Tried before Hon. C. F. MOULTON.

The opinion states the facts.

ALEX. McKINSTRY, for appellant.
J. LITTLE SMITH, for Attorney-General, *contra.*

[The briefs did not come into the Reporter's hands.]

B. F. SAFFOLD, J.—The appellant was convicted on
an indictment founded upon section 3616 of the Revised
Code, prohibiting lotteries without the legislative authority
of the State. He defended on the ground that whatever
he had done was protected by the charter of the Tuska-
loosa Scientific and Art Association, the revenue law which
imposes a license on lotteries, and the act to regulate lot-
teries approved December 31st, 1868.

He was the book-keeper of the above named association,
and the evidence tended to show that he sent out to the

subordinate offices the rules which were to govern their operations. The State's witness testified that he had bought tickets from several of the offices, and one from the principal office. The chances were put in an ordinary lottery wheel, and were drawn from it in the manner usual in lotteries. He had drawn several prizes, and in one instance he drew a prize of the value of a dollar, which was paid to him in money. No other object or thing was offered or shown to him, nor was he required to say that he was not satisfied with the estimated value of anything he had drawn, and more to like purpose.

The substance of the charge given by the court was, that if the defendant had done any of the acts charged in the indictment, without authority of law, within twelve months preceding the indictment, he would be guilty. The charter of the association did not authorize a lottery different from that described in it. To this the defendant excepted and asked the following charges, which were refused : 1st. The act of drawing a lottery or selling lottery tickets was authorized and licensed by the revenue law, and the act passed December 31st, 1868, to regulate lotteries. 2d. Any violation of the charter of the Tuskaloosa Scientific and Art Association could only be taken advantage of by a civil proceeding to vacate the charter, and the defendant could not be found guilty of criminal intent. 3d. The connection of the defendant with the association as bookkeeper, in the absence of direct proof of his having sold any ticket himself, would not be sufficient to convict him. 4th. If the jury believed the evidence, they could not convict the defendant. 5th. Before a conviction could be had under the indictment, there must be some evidence that a lottery had been drawn, and it must be proved that the defendant had sold a ticket in such lottery.

The Tuskaloosa Scientific and Art Association was incorporated for the purpose of encouraging science and art, and aiding the University of the State in replacing its library and establishing a scientific museum. It was authorized to distribute awards by lot, chance or otherwise. These awards were to consist of books, paintings, statues, scientific instruments, &c., or any other property or thing,

ornamental, valuable or useful. To prevent fraud or speculation, the articles to be distributed were to be appraised, and if they were not worth the value annexed in the published list, the persons drawing them might claim the value in money, or so much money with the article as would be equivalent to it.—§§ 6 and 7 of Charter.

The designation of the property or things which may be distributed by lot is the exclusion of other things not comprehended. The provision requiring the payment of money in lieu of the award drawn is an exclusion of money as one of the articles that may be generally awarded. A pretended compliance with the provision, having for its object the distribution of money, would be such an evasion of the limitations of the charter as would subject the offeders to a criminal prosecution.

Whether a book-keeper of the association is chargeable with participation in any unlawful violation of the charter, must depend upon the evidence implicating him directly, or by sufficient circumstances.

The act of December 31st, 1868, does not authorize any lottery at all, but seeks to regulate such as have been or may be authorized by the legislature. The lotteries referred to in the 7th section are manifestly those created out of the State, the tickets of which may be vended in the State, with a license from the commissioner. The revenue law merely imposes a tax on lotteries legally established.

It was not necessary to prove that the defendant had sold any tickets himself, to convict him of being concerned in setting up, or carrying on, a lottery without legislative authority.

We see no error in the charge of the court, or in its refusal to give those asked by the defendant.

The judgment is affirmed.

PETERS, J., *(dissenting.)*—I have not been able to bring myself to concur with the majority of the court, in the judgment pronounced in this case, nor in the reasoning by which it is supported.

The indictment contains three counts. They are as follows:

1. "The grand jury of said county charge, that before the finding of this indictment, Marion Marks set up, or was concerned in setting up or carrying on, a lottery without the legislative authority of this State, against the peace and dignity of the State of Alabama."

2. "And the grand jury of said county further charge, that before the finding of this indictment, Marion Marks, on the 16th day of October, 1869, sold, or was interested or concerned in selling, tickets or shares in a lottery not authorized by the legislative authority of this State, against the peace and dignity of the State of Alabama."

3. "And the grand jury of said county further charge, that before the finding of this indictment, Marion Marks set up, or was concerned in setting up or carrying on a lottery without the legislative authority of the State of Alabama, or sold, or was interested or concerned in selling lottery tickets or shares in a lottery not authorized by the legislative authority of the State of Alabama, against the peace and dignity of the State of Alabama."

On this indictment the defendant, said Marks, was convicted of "the misdemeanor of setting up or carrying on a lottery without the legislative authority of this State," and fined one hundred dollars and costs.

On the trial in the court below, the evidence for the prosecution tended to show that the defendant, Marks, was the acting and superintending clerk in the principal office of the Tuskaloosa Scientific and Art Association in the city of Mobile in this State; that the witness had bought several tickets in the drawings of said association, but had never bought any from the defendant, said Marks, or seen him sell any tickets. The witness further showed that he had "won a prize or prizes, and on demand that he was paid the amount in money, without any other formality or ceremony." It was not shown that the defendant had any connection with paying the prizes thus drawn, or even knew that they were paid, or that they had been drawn under his superintendence. On the part of the said defendant,

4

the act incorporating said association was given in evidence; and also a copy of the rules and regulations for conducting the business of said association were given in evidence by said defendant. And there was evidence tending to show that the business of the association was conducted according to the act incorporating the same and in conformity with said rules and regulations aforesaid.

On this testimony the court, among other things, charged the jury, that " the act under which the defendant seeks to protect himself does not authorize a lottery in this State, in the sense in which the term lottery is employed in section 3616 of the Revised Code of this State. If you should believe from the evidence that the defendant was engaged in a lottery, or that he sold a ticket which drew a prize, and without any other act on the part of the defendant, except that when the ticket was presented he paid it in money,—in this case he would not be protected by the act under which he seeks protection." This was the act of February 3, 1866, incorporating the association abovesaid.

This charge is obviously wrong, in whatever light it may be viewed. At the present term, it has been decided by this court, that " the Tuskaloosa Scientific and Art Association" may set up and carry on a lottery for the purposes mentioned in the act of its incorporation.—*Broadbent v. Tuskaloosa Scientific and Art Association*, at January term, 1871. And it seems to me scarcely possible to avoid this conclusion on reading the act itself.—Pamph. Acts, 1865–66, p. 269, Act No. 190, §§ 6, 7. The statute directs that " the articles to be distributed or awarded *may* consist of · books, paintings, statues, antiques, scientific instruments or apparatus, or any other property or thing that may be ornamental, valuable or useful."—*Ib.* § 7. It would certainly be an unusual construction of this language to contend that it did not include a purse of gold or silver dollars, or a bundle of legal tender treasury-notes of the United States. The specifications in the act, instead of restraining the corporation to the things specially named in the enumeration, goes on to open the list for " *anything* that may be ornamental, valuable or useful." Yet the charge of the court above recited has added to this enum-

eration the words "except money." Upon a special issue, if it were attempted to prove the language of the act above cited, which is as the general assembly enacted it, could it be possible that the proof would not be complete without the proof also of the words implied by the charge of the court—that is, "except money." Such an addition to the language of the act is prejudicial to the defendant, and it seems to me but little short of judicial legislation. Chief-Justice Marshall said, in one of his masterly opinions, that not to enforce the constitution was judicial "treason." Is it not equally judicial treason to disregard it, by judicial legislation, under pretense of construction?—*Cohens v. Virginia,* 6 Wheat. 404, 264. If the lottery was *authorized by law,* and it was properly *drawn,*—and these are facts not disputed—how could it render a party guilty, that had paid the award in money, instead of paying it in some "thing that may be ornamental, valuable or useful?" It would be mere tautology to insist that the "things ornamental, valuable or useful," named in the statute, meant only such as were of the several classes mentioned by name. This puts the guilt upon the *manner* of the payment of the award, and not on the setting up or carrying on the lottery. The payment of the award is not a misdemeanor, or an offense, under section 3616 of the Revised Code, as the learned judge in the court below instructed the jury. The charge was, therefore, erroneous, and the conviction was improper and ought to be reversed.