# Tuscaloosa Scientific and Art Association *v.* State *ex rel.* A. O. Murphy.

*Proceeding to vacate Charter.*

1. *Demurrer, ruling of court on; when not revisable.*—Rulings upon demurrer not shown otherwise than by recitals in the bill of exceptions, cannot be revised on appeal.

2. *Misuser or non-user; who may institute proceedings against corporation for.*—Under the act of 1843 (Clay's Dig. 515, § 39) the solicitor of the circuit was authorized to institute proceedings to have a declaration of forfeiture against a private corporation for misuser or non-user, only at the *instance of* and in behalf of the State; and hence it was held the solicitor could not institute such proceedings at his own volition, but only on the direction of the Attorney General or the Legislature.

3. *Same; who may institute proceedings, under §§ 3419-20 of Code.*—Under the statute, subsequently adopted and now forming a part of the Code (§§ 3419-20) it is provided that such action may be brought on the information of any person giving security for the costs of the action, to be approved by the clerk of the court in which the same is brought, and whenever security for costs is given and approved by the clerk, any person may institute and prosecute proceedings in that court, under § 3420 of the Code.

4. *Charter of private corporation; proceedings to vacate charter of.*—Although individuals having no special interest in private corporations, may institute proceedings for their dissolution, yet the proceedings are something more than a mere private suit, and are conducted in the interest of the State, no matter by whom brought; and the relator cannot confess error or dismiss the suit, without leave of the court before which the proceeding is pending.

5. *Tuscaloosa Scientific and Art Association, act incorporating; what does not authorize.*—There is nothing in the provisions of the act to incorporate the Tuscaloosa Scientific and Art Association, for the purpose of encouraging science and art and aiding the University of the State in replacing its library and establishing a scientific museum, approved February 3d, 1866, which

[Tuscaloosa Scientific and Art Association v. State ex rel. A. O. Murphy.]

gives any warrant for setting up a lottery, or the selling of tickets authorizing the winner to demand *money* in the first instance.

6. *Same; rules furnished agents by; admissibility of.*—Where the corporation issued and furnished rules to its agents for their guidance, in conducting the scheme of awards and prizes authorized by its charter, the corporation may introduce them in evidence, when a forfeiture of the charter is sought for violations of the charter by its agents; it being for the jury to determine, in view of the evidence, whether it was the *bona fide* purpose of the corporation to be governed by such rules, or whether the rules were mere machinery to give the conduct of its business a show of legality, violations of which by agents were acquiesced in, or connived at by the officers in charge of its affairs.

6. *Witness; what jury may look to, in determining weight of testimony by.*—In determining the weight to be accorded to the testimony of a witness testifying to violations of its charter by the defendant corporations, the jury may look to the fact (if they find such to be proved) that the proceeding was the result of a combination between the owners of two other rival lotteries, and such witness was interested or concerned in either of them.

8. *Forfeiture of charter; what not ground for.*—Where the corporation has given instructions to its agents, in accordance with its charter, for their guidance in conducting its business as prescribed by such charter, violation of these instructions by the mere agents of the corporation, without the knowledge of the corporation, is not ground for a forfeiture of the charter.

APPEAL from Circuit Court of Mobile.

Tried before Hon. H. T. TOULMIN.

This was an information filed by the State in the relation of A. O. Murphy against the Tuscaloosa Scientific and Art Association, for the purpose of having their charter declared forfeited for misuser. The information alleged that the Association was formed for the purpose of distributing articles of art and science, and that by its charter it was authorized and empowered to receive subscriptions and to sell and dispose of certificates of subscription which shall entitle the holder thereof to any articles which may be awarded to them; but the act provides that such distribution of awards shall be fairly made in public after advertisement, by lot, chance or otherwise, at its office in Tuscaloosa or at any other convenient place that may be selected by the said corporation. The charter further provided, that before any distribution the corporation should advertise a list of all the articles to be drawn for, with the value of each article. The Association was, by its charter, allowed to distribute paintings, scientific instruments, and anything useful or ornamental, *"save and except money or legal currency of the United States of America."* The charter further provided, that if any winner of any of the prizes offered should believe that the prize was not worth the annexed value in money, he should be entitled to an appraisement of the article, and if the value thus ascertained was not equal to the value advertised, he should be entitled to demand and receive from the Association in lieu thereof the money value of the article as advertised, or a sufficient sum in addition to the article, to

render the amount received by him equal to the value advertised. The information alleged that the defendant, in violation of its charter, and contrary to the criminal laws of the State, was engaged in carrying on a lottery; that the only prizes distributed were money prizes, and that the business of the corporation has been habitually conducted, not in accordance with its charter, but that said charter was used as a contrivance to evade the law and to gamble with the buyer of the ticket or certificate sold by it, for money and for no other thing.

On the hearing the defendant moved the court to dismiss the information, on the grounds : 1st, because it is at the instance of a private relator, instead of the Attorney-General of the State; 2d, it was filed without leave of the court, first obtained ; 3d, defendant is not bound to answer the information. This motion the court refused and the defendant excepted. The record contains a demurrer to the information, but the judgment entry fails to show the ruling of the court thereon.

The relator was introduced as a witness, and testified that he had been in the employ of defendant as an agent for the sale of tickets, and the payment of prizes drawn by the holders of tickets sold by him, and that the only instructions received by him in regard to these matters were verbal ones by the secretary and treasurer of the corporation, which did not specify what article should be drawn, but simply related to the sale of certain combinations to be drawn. The witness further testified that he sold the tickets as for a money prize, and that the transaction was so understood by the buyer of the tickets so sold; that he never offered the winners any object of art, or any other thing of value but money; that he had no such thing in his office, and that there was no other form or ceremony in settling for the prize than the demand and payment of money for the prize drawn. He further testified that there was no advertisement in the newspapers of the objects of art to be distributed, and that there was no notice of them in the office where he sold the tickets ; but that he had seen a standing placard on a pasteboard in the central office, containing a list of some articles which were never changed. He further testified that in the year 1869, he had an office in the central office of the defendant, and that it was usual during that time to pay the prizes drawn in money, without the offer of any thing and without any other form or ceremony than the presentation of the ticket.

One Ballentine testified that he had been commissioner for the defendant, to see that the drawings were fairly con-

ducted, and that he had, while acting in such capacity, seen a great many prizes paid at the central office of the defendant, and that according to his observation it was usual to offer an article of art or value to the drawer of a prize before paying the prize in money, and that in some instances he had known other articles than money to be given to the winners. He also testified that there were at the central office a considerable number of chromos, pictures, &c., to be used as prizes, and also, that as he understood, arrangements had been made with merchants in the city to deliver, on the order of the defendant's treasurer, any article drawn as a prize. He also testified that agents were instructed not to pay a prize in money, unless upon refusal of the article drawn, and that printed rules to that effect had been generally distributed to agents.

One Lewis testified that he had often bought tickets in the distributions of the defendant, and had drawn several prizes, all of which were paid in money without the offer of anything else, and that he bought his tickets with the understanding that the prizes were to be paid in money. "On cross-examination this witness testified that on one occasion he was told he must sign some paper before he got his money; that he did not know or care what it was, but that he was informed that he must sign it to get his money, and he therefore signed it, but that nothing but money was ever offered him."

One St. Paul, a witness for the defendant, testified that as attorney for it he had been requested to prepare all forms used by it, in conformity with its charter, and that as such attorney he prepared the tickets used, and also a form of refusal and appraisement. The witness testified that the body of rules and regulations were used by defendant, and that several thousand copies had been distributed, chiefly to agents. This witness further testified, that he had often seen prizes drawn paid in kind, and that on some occasions, where the defendant did not have the articles drawn, they had procured them from dealers and delivered them to the winners of the prizes.

Defendant then offered in evidence the rules and regulations prepared by the witness, St. Paul; to the introduction of which the plaintiff objected, on the grounds, "first, that it was not shown by any record of the defendant, or otherwise, that they had been adopted by the corporation; because, if they were rules and regulations of the defendant's, there was better evidence of the fact than was contained in a mere printed pamphlet, distributed by the defendant's manager; and because the rules were no answer to regular and con-

[Tuscaloosa Scientific and Art Association v. State ex rel. A. O. Murphy.]

stant acts of its agents, known to and approved by it."

The court sustained the objections and excluded the testimony, to which the defendant excepted. There was evidence that the relator had, at one time, been in the employ of the defendant, and that on its failure to give him a better place than agent for the sale of tickets, he had left its service and was, at the time he testified, in the employ of one Moses, who was the owner of an interest in another lottery, known as the Mobile Charitable Association, and between whom and the officers of the defendants there existed a good deal of ill-feeling, growing out of the efforts of defendant to break up the lottery of which Moses was the manager. It also appeared that Moses paid the expenses of this suit, including attorney's fees. There was also evidence that one Boyd, who was interested in another lottery, known as the Mutual Aid Association, had also employed counsel to assist in the prosecution of this suit. This was all the evidence necessary to an understanding of the points decided.

The defendant then requested the following charges in writing: 3. "If the jury believe, from the testimony, that the defendants gave instructions to their agents, and that these instructions were in accordance with its charter, then proof that the instructions were violated by the agents, without the knowledge of the defendants, does not make such acts of the agents the acts of the corporate body and there should not be a verdict of guilty." 9. " If the jury believe, from the evidence, that this prosecution is the result of a combination or conspiracy by and between the proprietors of the Mutual Aid Association, and the Mobile Charitable Association, and that such associations are engaged in the lottery business; and if they believe from the testimony of any witness that he was concerned or interested in either of said associations, that circumstance may be considered by the jury in determining the credit they will give to his testimony." These charges the court refused to give, and the defendants excepted. The various rulings of the court to which exceptions were reserved, are now assigned as error.

[NOTE BY REPORTER.—After the submission of the cause in this court, the attorney for the relator, upon instructions from his client, filed a confession of errors in the record.]

PERCY WALKER, ALEX. McKINSTRY and HENRY ST. PAUL, for appellant.—This proceeding could only be instituted by the State or by the Attorney-General.—9 Cranch, 43; 4 Wheat. 661; 11 Ala. 472; 19 Md. 239; 5 Mass. 230; ib. 423; 8 Peters, 281; 19 Ala. 514. The charges requested by the

[Tuscaloosa Scientific and Art Association v. State ex rel. A. O. Murphy.]

appellant are free from error, and they should have been given.

JOHN W. A. SANFORD, Attorney General, with whom was J. LITTLE SMITH, *contra.*—The Code now gives any citizen a right to file the information upon complying with the requisites of that section.—R. C. § 3080. The case in 19 Ala. arose under a different statute.

STONE, J.—The rulings of the Circuit Court on the demurrer filed to the information are shown only in the bill of exceptions. Our uniform holding is that such question, thus presented, will not be considered.—*Petty v. Dill*, 53 Ala. 641.

A corporation is a franchise. Its privileges are conferred by the sovereignty; and hence, it is defined to be "a branch of the king's (or governmental) prerogative, subsisting in the hands of a subject," or citizen.—2 Blackst. Com. 37; 3 Kent Com. 458; *The State v. Moore & Ligon*, 19 Ala. 514. The power to create private corporations, and to confer on them privileges not enjoyed by the general public, is rested on the public services such corporations are supposed to perform; such as increased facilities to commerce, employment given to labor, and increase of public wealth. Or, when the corporation is eleemosynary in its purposes, the benefaction it proposes to bestow. It is thus shown that the public have an interest even in private corporations, and in their uses and abuses. Based on this idea, this court held, in *The State v. Moore & Ligon*, 19 Ala. 514, that the solicitor of the circuit, *of his own volition*, could not institute proceedings to have a private charter declared forfeit, for nonuser and misuser. And it is here contended, on the authority of that case, that the present information should not be entertained, because it does not appear that the Attorney-General, or any other competent State authority, directed or authorized the institution of the proceedings.

The case of *The State v. Moore & Ligon, supra,* arose under the act of 1843.—Clay's Dig. 515, § 39. That act authorized the solicitor of the circuit to sue out the process therein authorized, "*at the instance of,* and in behalf of the State," &c. Under the clause we have italicised, this court held that the solicitor could not move in such matter of his own mere volition, but could only act under the direction of the Legislature, or of the Attorney-General. We think the reasoning of our predecessors in that case was sound.

The present case arises under statutory provisions, which were enacted after the case of *State v. Moore & Ligon* was determined.—See Code of 1852, §§ 2651–2; Code of 1876,

§§ 3419–20.   Under this statute, not only may the judge of the Circuit Court direct the solicitor of the circuit to bring the action, but "such action may be brought on the information of any person, giving security for the costs of the action, to be approved by the clerk of the court in which the same is brought."   This language 'is so entirely unlike that of the former statute, that we feel bound to give it a different construction.   The Legislature thought they were sufficiently guarding the public against an abuse of its process when they required security for costs.   We feel constrained, by the language of the statute, to hold that whenever security for the costs is given and approved by the clerk, any person may institute and prosecute proceedings under section 3420, Code of 1876.

The act, under which the appellant claims the right to carry on its business, has a very attractive caption.—See Pamph. Acts 1865–6, p. 269.   "Encouraging science and art, and aiding the University of the State in replacing its library, and establishing a scientific museum," are certainly very praise-worthy purposes.   The testimony in the present record tends to disclose the machinery of a lottery, organized and conducted as such enterprises usually are, for the determination and distribution of pecuniary prizes, on the combination principle.   Looking into the body of the statute, we fail to find any warrant for setting up a lottery.   How far the imposing manifesto has been realized, in the encouragement of science and art, or in aiding the State University in replacing its library, and establishing a scientific museum, or, how far the premiums offered by the Association for essays on science and art, or works of art, or useful inventions, have tended to awaken the creative and inventive genius of the "citizens of Alabama," the record does not inform us.   We only know the working of the enterprise in the evidence before us.—See *Marks v. The State*, 45 Ala. 38.

In three particulars we think the Circuit Court erred. There is much testimony in the record, tending to show that the agents and employes of the Association did not follow the rules adopted and given to them for their government; and that these violations of rules were known to, and not disapproved by those having control and management of the corporation.   The stereotyped indorsement on what are called "certificates of subscription," indicates very clearly that the premiums and awards sometimes offered to the winners of prizes were not expected to be taken, but that the value in money would be demanded and paid.   The appraisement was to be a condemnation—not even a reduction of value—for the printed form affirms "that the articles drawn

[Tuscaloosa Scientific and Art Association v. State ex rel. A. O. Murphy.]

by this certificate are not worth the prices affixed to them." This savors strongly of simulation. A vigilant, faithful administration of the law looks beyond the thin covering, under which violators of legal duty sometimes seek to conceal themselves. The law deals with facts, when they can be ascertained; not with pretexts and disguises. Still, the evidence tended to show that the rules offered in evidence were, at least sometimes, furnished to the agents. The testimony was simply oral; and it was for the jury to determine whether it was the sincere purpose of the company to be governed by the rules; whether they were disregarded by the agents, with the knowledge, connivance, acquiesence, or approbation of those having the management; or whether this was mere machinery, to give to the performance a show of legality. The rules should have been allowed to go the jury, with proper instructions.

Charge, numbered 9, as asked by defendant, should have been given. The circumstances therein supposed, are proper considerations for the jury, in determining the credibility of witnesses thus circumstanced.

Charge No. 3, as asked, asserts a correct legal proposition, and it should have been given. The court could not affirm, as matter of law, that the officers of the Association knew the agents were violating the rules, no matter how strongly the testimony might tend; that was a question for the jury. They must determine whether they believe the evidence or not.

We have said above that the public have an interest in private corporations. They have an interest in such corporations, because they affect the moral and economic conditions of society. These are the considerations on which the franchise is granted or withheld, and they control in the matter of revoking the privilege for misuser. Hence, although private individuals, having no special or peculiar interest, may institute proceedings for their dissolution, such proceedings are more than a private suit. They are brought in the name of the State, although when they are founded on the information of an informer, he must be joined as plaintiff with the State.—Code of 1876, §§ 3419-20, 3425. And in all cases of conviction, whether the proceeding be set on foot in the name of the State alone, or at the instance of an informer, the solicitor is entitled to a fee.—See Fees of Solicitors, § 5047, Code of 1876. This shows that such proceedings are conducted in the interest of the State, no matter how instituted. The relator, in such case, can neither confess errors, nor dismiss the suit, without leave of the court before which it is pending.

Reversed and remanded.