THE STATE *vs.* MOORE & LIGON.

1. A *scire facias* is the proper remedy in proceeding under the Act of February 6, 1843, (Clay's Dig. 515, § 39,) against an incorporated turnpike company for a forfeiture of its charter.

2. The jurisdiction of the superior courts cannot be taken away by mere implication.

3. The Act of February 4, 1846, (Pamphlet Acts, 44,) under which an incorporated turnpike company may be indicted for a failure to keep their road in repair, does not deprive the State of the right to proceed for a forfeiture under the Act of 1843.

4. In proceeding by *scire facias* under the Act of 1843, against an incorporate company, the *scire facias* should allege that the defendants procured the act of their incorporation, or that they accepted it, or acted under it.

5. The Solicitor of the circuit cannot, *of his own volition*, sue out a *scire facias* against an incorporated turnpike company for a forfeiture of their charter, but can only act under the direction of the Legislature, or of the Attorney General.

ERROR to the Circuit Court of Lauderdale. Tried before the Hon. Thomas A. Walker.

THE Solicitor of the Fourth Judicial Circuit sued out a *scire facias* in the name of the State against the defendants, to show cause why a forfeiture of their charter should not be declared. The *scire facias* alleged that the defendants had been authorized by an act of the General Assembly of the State, approved February 3, 1846, to turnpike a certain road which is described, and that they had forfeited their charter, both by *misuser* and *non-*

*user*. The defendants demurred to the *scire facias*, and their demurrer was sustained.

Attorney General, for the State:

1. The main question before the court is as to the sufficiency of the *scire facias*. The only requisite of a *sci. fa.* is that it should contain the same certainty that a declaration must. It should simply state in methodical and legal form the plaintiff's cause of action.

Declaration at the suit of injured party against corporation, stating that the road was out of repair, &c., was held good.—Noyes v. Turnpike Co., 11 Verm. 531; Turnpike v. Boyde, 2 Harring. 315; Braden v. Berry, 20 Wend. 55.

2. *Scire facias*, at common law, was the proper mode where there was a legal existing body, capable of acting, but who had abused their power.

Information in nature of *quo warranto*, where there is a corporate body *de facto* only, but who from some defect in their constitution cannot legally exercise their franchise.—2 Kent. 312; 2 Bacon. Ab. (old ed.) 31 and notes.

The *scire facias* appears to deny this to be a legal existing body, capable of acting, but that it is a body corporate *de facto* only, and from non-compliance with the requirements of its charter it cannot legally exercise its franchise, and perhaps *quo warranto* would be the proper mode.

Notwithstanding this distinction between *scire facias* and *quo warranto*, we are not without authority to sustain a *scire facias* at common law against a corporation for a forfeiture of its franchise for neglect to perform the provisions of its charter, though never a legal existing body.—23 Wend. 234; 2 Ashmead, 379; 11 Verm. 431; 3 Dev. & Batt. 14; 8 Hum. 235; 1 Dougl. 282.

3. But we are not not dependant on the common law for our right to a *scire facias* against a corporation for misuser or non-user.—Clay's Dig. 515, § 39.

Non-performance of the conditions of the act of incorporation is deemed, *per se*, a misuser that will forfeit the grant at common law.—23 Wend. 205.

4. Has this statute, (Clay *supra*, act 1843,) been repealed by the act 4th Feb. '46, p. 44?

Admit that a proceeding under the act of 1843 was a criminal proceeding, how stands the case? Why, it may be contended that the enacting of a subsequent statute to the act of 1843 repealed by implication that act. But the law never favors the repeal of a statute by implication, unless the repugnance be apparent, or in their operation they be irreconcilable.—Smith's Com. 879 ; 3 Ala. 626. These statutes are not repugnant and irreconcilable, admitting them both to be penal statutes. The act of 1843 is not repealed.

Conceding a *scire facias* under the act of 1843, issued against corporation for abuse of their powers, purely a criminal proceeding, it created no new offence. To suffer a highway to be out of repair was indictable at common law.—Arch. Cr. Pl. 4, and Com. v. Wilkerson, 16 Pick. 175. A turnpike is a highway and indictable.

And it is a rule of almost universal application, that if a statute, fixing a penalty for an offence, do not either expressly, or by implication, cut off or repeal the common law punishment for the same offence, it is merely cumulative.—23 Wend. 244 ; 5 Por. 32 ; 5 Ala. 670 ; Arch. Cr. Pl. 2. The act of 1846 would be cumulative.

But the act of 1843, authorizing *scire facias*, is not a criminal proceeding, but a civil proceeding.—State Bank v. State, 1 Blackf. 272 ; Smith et al. v. The State, 7 Por. 494.

As to the objection that the corporation may be indicted, that will not be sufficient to hinder a forfeiture of the franchise.— 23 Wend. 243-4.

Is this statute against the Declaration of Rights, Art. 1, § 11, which says, "no person shall be proceeded against criminally, by information," except, &c.?—State v. State Bank, 1 Blackf. 272.

If a *scire facias* be against the Declaration of Rights, a *quo warranto* must be also ; the latter is as much a criminal proceeding as the former, yet the books abound with statutes of States giving *quo warranto* as the remedy by which the charters of corporations are surrendered for non-compliance. If the act of 1843 be unconstitutional, there would be no way to dissolve a corporation.

Non-compliance of any one of the provisions of the act creating the corporation will forfeit the charter. A franchise is a con-

The State v. Moore & Ligon.

tract as much as an individual contract. If feoffment be made upon lands upon condition of paying rent, for a failure to perform the feoffor may enter.—23 Wend. 205.

Here the entering of a feoffor is as much a criminal proceeding as *scire facias* to seize privileges or immunities (which belong to the Government) from corporations, for not complying with their contract.—23 Wend. 205.

R. W. WALKER and T. M. PETERS, *contra :*

1. The *sci. fa.* in this case was not issued "at the instance of the State," as required by the statute. It was not ordered by the Governor, the Legislature, the Attorney General, nor by the grand jury of any county through which the road passed. It was issued by the solicitor *mero motu.* It is contrary to public policy, to lodge a power, so grave in its character and so important in its consequences, with the solicitors of the circuits, to be exercised by them at discretion. Such a construction of the statute violates both its letter and spirit.

2. This proceeding is in its nature criminal, and the same strictness of pleading is required as in a penal action.—9 Wend. 373-4-5-7, and cases cited ; 23 ib. 193, 215, 217, 221, 223, 230 ; 7 Watts, 181.

The *sci, fa.* is fatally defective, 1. Because there is no allegation that defendants accepted the charter, or that they procured its passage. 2. Because none of the facts relied on as grounds of forfeiture are stated positively, but all of them by way of recital, leaving every thing to mere inference, and being throughout so indistinct, uncertain and general, as not to be issuable. 3. Because it does not conclude *contra formam statuti,* which was essential, our statute on this subject applying only to indictments. See on these points, 1 Chitty Pl. 237 and notes, 373-4 ; 1 Chitty Cr. L. 231, and cases cited ; 2 Lord Raym. 1363 ; 1 Salkeld 375 ; 23 Wend. 215, 221, 223, 254 ; 6 Ala. 664 ; 5 Dowl. & Ry. 13 ; 5 Greenl. 76 ; 10 Mass. 36 ; 9 Pick. 192 ; 5 ib. 168 ; 3 Cowen. 1 ; 1 Hawks. 192 ; Clay's Dig. 442, § 26.

3. Where the grantees of a charter have not complied with the terms upon which the franchise was to vest, there cannot be a judgment of forfeiture, and *sci. fa.* does not lie. *Quo warranto* is the only remedy. The former lies against a corporation

*de jure*, and the appropriate judgment is a forfeiture. The latter lies against a corporation *de facto*, and the judgment is ouster.—2 Bac. Abr. 482.; 5 St.. &. P. 46-7; 6 Sm. & Mar.. 599, (611-15;) 2 Ashmead, 349 (379;) Yelverton, 192.

4. The proceeding by *sci. fa.* is repealed by the act authorizing indictments against turnpike owners, and by the special provisions of this charter.—Acts of 1845-6, p.. 44, 143; 15 Ala. 746; 5 Pike 595, (cited 1 Suppl. U. S. D. 1987-8;) 9 Bac. Ab. 226-8.

PARSONS, J.—If there has been a forfeiture of the charter, it is clear, under the statutes, that a *scire facias* is the remedy. The act granting this charter to the defendants contains this language: "That said road shall be commenced in one year, and finished and put in repair as required by this act in four years after the passage of the same, otherwise all privileges hereby granted shall be forever forfeited." The general statute, which is prior in date, enacts that, "It shall be the duty of the several solicitors in this State, in whose circuit any turnpike road may be located, to issue a *scire facias*, at the instance of and in behalf of the State, against any owner of said road, whenever the provisions of any law creating such franchise shall have been so violated as to forfeit the same, by misuser or nonuser, or when the said owner shall have done or omitted any act or acts which amount to a surrender of the rights, privileges or franchises conferred by the act authorizing the same."—Clay's Dig. 515, § 39. And the next section of the general act, in such cases, requires that the judgment of the court, when the issue is found for the State, shall be that the franchise is forfeited. It was the intention of the Legislature to make the *sci. fa.* the remedy in all such cases, and we think the object has been accomplished by language that admits of no controversy. The Legislature had clear power to prescribe such a remedy and such a judgment.

2. This charter enables the judge and commissioners of roads and revenue, for a particular failure to keep the road in repair, which is specifically stated in the act, to declare a forfeiture. But the Legislature used no language indicating an intention to take away the jurisdiction of the Circuit Court, and the rule is, that the jurisdiction of the superior courts is not to be taken away by mere implication.

3. There is another act, approved 4th February, 1846, under which the defendants might have been indicted and fined if they failed, after being authorized to charge toll, to keep their road in repair, &c. But it is evident that the last mentioned act does not deprive the State of the right of claiming and proceeding for the forfeiture, though it might be a reason for relying upon an indictment and waiving the forfeiture, but this is at the option of the State.

4. But we think the *scire facias* was wholly defective in one point and uncertain in others, and therefore we think the demurrer was properly sustained. The charter is a mere authority, and so expressed. If the Legislature had undertaken to compel the defendants to construct the road, upon the terms and conditions of the charter, we should have looked into the question of its power to do so. The charter is an authority which did not become a contract with, or binding upon, the defendants, unless it had in some manner been-accepted. If the *sci. fa.* had stated that they procured the act, or accepted it, or acted under it, the case would have rested upon a different foundation. But nothing of the kind is alleged, and consequently, according to all analogy and precedent, there was no cause of action stated.— Lil. Entries, 411. It is not necessary to pursue the *sci. fa.* further, with reference to its defects and uncertainties.

5. The counsel of the defendants argued that the solicitor of the circuit could not proceed in such a case as this of his own volition, but that he must move only at the instance of the State. This is clear from the language of the act. That the act was drawn in view of the common law, and stands in harmony with it, will appear by reference to that law.

In England, informations lay against persons for misdemeanors, and were, *in those cases*, criminal proceedings. The practice of filing them existed at the common law, and may be traced to the earliest periods. Informations for offences more immediately affecting the King, his ministers, or the State, were filed *ex-officio* by the Attorney General, while those in which a private individual was virtually the prosecutor, were placed on record by the King's coroner or master of the crown office. Each of these officers had, and the attorney general still has the power of thus accusing the subject at his discretion. But the statute of IV. and V. William and Mary, c. 18, reduced the coroner to a

mere ministerial officer, and the informations exhibited by him in the crown office were subjected entirely to the Court of King's Bench. Criminal informations at this day are of two kinds, (in England,) those fixed *ex-officio* by the attorney general, at his sole discretion, and those prosecuted by the coroner or master of the crown office, by leave of the court according to the statute. Chitty's Crim. Law, 843-4-5, where the authorities are cited. "A franchise is a royal privilege in the hands of a subject," and proceedings against individuals for exercising them without, or contrary to the King's grant, are, where the King alone is concerned, under the direction of the attorney general. The ancient writ of *quo warranto* was the remedy. This was the origin of informations in the nature of a *quo warranto* at the common law. These also are filed by the attorney general of his own authority, or by the King's coroner, commonly called the master of the crown office, formerly of his own authority, but since the statute of IV. and V. William and Mary, c. 18, under sanction of the Court of King's Bench.—3 Burr. 1616; Angell & Ames on Corp. 606. The statute of IV. and V. William and Mary is not in force in this State, and we have none like it that can possibly affect this case; consequently the discretion of the State to proceed or not to proceed for the forfeiture, is not placed in the hands of any of our courts, and it has already appeared that they cannot derive it from the common law. The *scire facias* to repeal the King's letters patent, for any cause of forfeiture that may have occurred, is analogous to the case before us. In that case also, there was a discretion to claim or to waive the forfeiture. In such cases, "previously to suing out the writ, a petition or memorial must be presented to his majesty, and a warrant obtained thereon to the attorney general, upon which he will grant his fiat for suing it out; but, it is said, that when a patent is granted to the prejudice of a subject, the King of right is to permit him, upon petition, to use his name for the repeal of it."—2 Tidd's Prac. 1094. The case before us, however, is one not affecting the rights of any particular individual. It is clear that the State here is the source of all such franchises, to be granted or withhold by the Legislature at its discretion. But if, under our law, a forfeiture must be exacted for every act done or omitted which, in strictness, is a cause of forfeiture, then our law is obviously defective; and it is

The State v. Moore & Ligon.

not only defective, but wrong, if this high discretion may be exercised by persons who, with regard to it, are not the representatives of the State. The language of the act plainly shows that the Legislature did not intend to confide this discretion to the solicitors; but, on the contrary, it was the manifest intention to withhold it from them. They were to act "at the instance of the State," which excludes the idea of their acting upon their own will or discretion. But I feel some difficulty in the question, who is to represent the State in this matter of discretion? It is clear that the Legislature may do so, but if the discretion is confined to the Legislature, the greatest abuses may exist for a serious length of time, before they can be redressed. This could not have been intended. The solicitors were to proceed "at the instance of the State." This language, which refers the discretion to no particular department or officer, was, however, used with direct reference to the common law, where, in the case of informations in the nature of a *quo warranto*, the attorney general held the discretion. The ellipsis in the statute may, therefore, be filled up from the common law, and the result is that the solicitor, in such cases, may proceed at the instance of the Legislature or of the Attorney General. In this view we are sustained by the opinion of a great American judge, who said, in the case before him, "But an information for the purpose of dissolving the corporation, or of seizing its franchises, cannot be prosecuted but by the authority of the commonwealth, to be exercised by the Legislature, or by the attorney or solicitor general, acting under its discretion or *ex-officio* in its behalf; for the commonwealth may waive any breaches of any condition expressed or implied, on which the corporation was created, and we cannot give judgment for the seizure by the commonwealth of the franchises of any corporation, unless the commonwealth be a party in interest to the suit, and thus assenting to the judgment."—Com. v. Union Ins. Co., 5 Mass. 230.

We do not decide that our Attorney General, as an officer of State, can derive his powers from the common law, but we decide, by construction of the act in reference to the common law, which the Legislature evidently had in view, that the Legislature intended to confer this high discretion upon him, to be exercised in its behalf justly and impartially.

The judgment is affirmed.