## F. G. Hentig v. T. B. Sweet.

1. Officers of Corporation, *Interest Assigned by.* Where the president of a corporation, and the vice president and treasurer thereof, enter into a contract between themselves with reference to the management of the corporation, and with reference to debts due from the corporation to themselves severally, and to others, and with reference to securities for such debts, and the president afterward assigns the contract on his part to an individual who has no interest in the corporation, *held*, that such individual gets no interest in the corporation by such assignment, further than as the assignee of a creditor of the corporation.

2. Commercial Paper of Corporation; *Interest of Indorsers.* Where parties who are indorsers of commercial paper given by a corporation hold certain securities belonging to the corporation as collateral to secure the payment of such commercial paper, and the commercial paper is never paid, and finally becomes barred by the statute of limitations, *held*, that the indorsers of such commercial paper cease to have interest in the securities, and should return them to the corporation.

3. Officers of Corporation, *Agreement between; Assignment; Action.* Where a corporation owed its president a certain sum, and owed its vice president and treasurer a certain other larger sum, and gave such officers a certain mortgage to secure such sums; and by agreement between such officers the vice president and treasurer was made the agent for both, to collect the amounts due both, and to first pay himself the amount which his claim exceeded that of the president, and then to pay to the president one-half of the remainder; but the corporation became insolvent, and there was not a sufficient amount collected to pay even the amount of the excess of the vice president and treasurer's claim over that of the president, and the vice president and treasurer appropriated to his own use all that was collected: *Held*, That no cause of action arose in favor of the president or any assignee of his against the vice president and treasurer.

*Error from Shawnee District Court.*

THE nature of the action, and the material facts, sufficiently appear in the opinion. Trial at the January Term, 1884. The defendant objected to the introduction of any evidence by the plaintiff, on the ground that the petition does not state facts sufficient to constitute a cause of action, which objection the court sustained, and refused to admit any evidence in said action. This ruling plaintiff *Hentig* brings here for review.

*G. C. Clemens, A. H. Vance,* and *Waters & Ensminger,* for plaintiff in error.

*Rossington, Johnston & Smith,* and *W. P. Douthitt,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: On the trial of this case in the court below, the defendant, T. B. Sweet, objected to the introduction of any evidence on the part of the plaintiff, F. G. Hentig, upon the ground that the petition of the plaintiff does not state facts sufficient to constitute a cause of action. The court below sustained the objection, and refused to admit any evidence under the petition. The plaintiff, as plaintiff in error, now seeks a reversal of such ruling, by a petition in error in this court. The foundation of the present action is the following written instrument, with the assignment thereof, to wit:

"TOPEKA, SHAWNEE COUNTY, KANSAS.

"This agreement, made and entered into this 19th day of October, 1874, between Reuben D. Coldren, party of the first part, and Timothy B. Sweet, of the second part, witnesseth:

"That whereas, both parties hereto have advanced and loaned to the Topeka Rolling Mill Company various sums of money, and are jointly liable as indorsers on the paper of said company;

"And whereas, the Topeka Rolling Mill Company have voted to secure said indorsed paper by pledges of first-mortgage bonds;

"And whereas, said rolling mill company have given to said Sweet a second mortgage to secure their indebtedness to

him, and to secure him against loss as an indorser, therefore, it is hereby agreed by the parties hereto, that whereas, the said first-mortgage bonds have been placed as collateral to secure part of debt for which said second mortgage was given, that said second party shall assign and set off to said Reuben D. Coldren, of the first part, an interest in said second mortgage equal in amount to the proportion said Coldren has advanced or loaned to said company, bears to the amount said Sweet has advanced or loaned to said company, to the end that after the payment of the amounts for which the parties hereto are indorsers, the parties hereto may be alike secured by said second mortgage.

"And it is further agreed by the parties hereto, that they will stand by each other in carrying forward to a successful issue the rolling mill enterprise, so far as they can, without incurring further liability or advancing more money.

"It is further agreed that said Sweet has advanced or loaned said rolling mill company more money than said Coldren.

"And whereas, it is hoped that the mill will make money, it is agreed that after the paying of running expenses, any surplus profit shall be applied to paying off the debts said Sweet is indorser for, and the amount said mill owes him, until the same is reduced to the amount said Coldren has advanced or loaned said mill company; that so far as the parties hereto are concerned, they may be equally interested in said mill company, and entitled to equal profits.

[Signed]          T. B. SWEET.<br>
R. D. COLDREN."

Indorsed:

"MAY 12, 1875.— For value received, I assign and sell to Jno. R. Mulvane all my rights and interest in and to the within contract.                    R. D. COLDREN."

"FEBRUARY 4, 1882.

"For value received, I hereby sell and assign to F. G. Hentig all my right, title and interest in and to the within contract, without recourse.          JOHN R. MULVANE."

As will be seen from the foregoing indorsements, Hentig, through Mulvane, is the mere assignee of Coldren; and all his rights are founded solely upon the foregoing instrument in writing; and yet his counsel speak of the instrument as

"A writing, facetiously termed an agreement, but which, by its grandiose vagueness, eloquent incomprehensibility, and

pompous circumlocution, impresses one strongly with the suspicion that its author — Mr. Sweet — must have been accustomed to diplomatic correspondence, and had imbibed deeply of the spirit of M. Talleyrand or Machiavelli. The elegant document may be found on pages 7, 8 and 9 of the printed case-made, and will be found as entertainingly obscure as the solution of a kindergarten puzzle."

Now, notwithstanding all this vagueness and obscurity, counsel have done but little to enlighten this court. The petition below and the briefs of counsel are about as perplexing and bewildering as the "agreement" or "contract" itself. The plaintiff, in addition to setting forth this instrument in writing, or "contract," in his petition, also alleges, among other things, the following: At the time when this instrument in writing or "contract," was executed, and prior thereto, the Topeka Rolling Mill Company was a corporation acting under the laws of the state of Kansas, with R. D. Coldren as its president and T. B. Sweet as its vice president and treasurer. The company at that time was embarrassed financially. Sweet had loaned it a sum of money, the amount of which is unknown to the plaintiff, but not exceeding $15,000. Coldren had also loaned the company a sum of money, amounting to $13,122.39. Sweet and Coldren were jointly liable as indorsers of commercial paper given by the company to others, to the amount of $12,000. The company had given to Sweet second *mortgages* upon all its real and personal property, to secure him. The "contract," however, mentions *only one mortgage*. The petition further alleges: The rolling mill company had given to Coldren, as collateral security to him, fourteen of its first-mortgage bonds, of $1,000 each. The "contract," however, speaks of the rolling mill company as having *voted to secure the indorsed paper* by pledges of first-mortgage bonds. The "contract" does not state, however, with whom the bonds were to be deposited as pledges, or what the amount of such bonds should be. The "contract" also speaks of first-mortgage bonds having been placed as collateral security for part of the debt for which the second mortgage was given. But with whom these bonds were placed or

deposited, and what amount they represented, is not stated. But as they were intended to secure a part of the debt for which the second mortgage was given, and as the second mortgage was given to Sweet, and to secure him, it would seem probable that they were placed or deposited with Sweet, and not with Coldren. No *fourteen* first-mortgage bonds are mentioned in the "contract," and none are mentioned as security to Coldren. The petition further alleges: After the execution of said written instrument or agreement, "Coldren, *pursuant to said agreement*, delivered to the said defendant the fourteen first-mortgage bonds," "without other consideration than the execution of said agreement," and they were a portion of a series of sixty bonds of $1,000 each. On December 21, 1874, A. C. Huidekoper, the holder of thirty-one of said first-mortgage bonds, commenced an action against the rolling mill company and many others, in which action a receiver was appointed who took charge of all the rolling mill property, and in which action, on September 21, 1876, many judgments were rendered against the rolling mill company — one in favor of the Birmingham Iron Foundry for $37,596, secured by mechanics' liens, which judgment was declared to be a first lien upon the property of the company; one or more in favor of Huidekoper and others, for $72,313.80, secured by the aforesaid first-mortgage bonds, which judgment or judgments were declared to be second liens upon the property; and one in favor of the defendant, Sweet, for $36,599.40, secured by said second mortgages, which judgment was declared to be a third lien upon the property. The other judgments were not declared to be liens upon any property. Afterward the rolling mill property was sold under said judgments for $60,001, and the amount was credited upon the judgments constituting the two prior liens on the property, leaving Sweet's judgment, which constituted the third lien, and the other judgments, which were not liens upon the property at all, wholly unsatisfied, except that Sweet afterward by execution collected about $1,000, to be credited on his judgment. The debt which the rolling mill company owed to Coldren has never been paid,

but is still due and unpaid. The debts due on said commercial paper indorsed by Sweet and Coldren have never been paid, but they have all long since been barred by the statute of limitations. There is an obscure allegation in the petition that some person or persons procured a judgment or judgments upon the aforesaid fourteen first-mortgage bonds, and that such judgment or judgments were assigned by the holder or holders thereof to Anna B. Sweet, the wife of the present defendant, and that the amount of such judgment or judgments was afterward paid to her by Huidekoper and the Birmingham Iron Foundry, for the benefit of Sweet. There are also allegations in the petition that by a previous agreement between Sweet, Huidekoper and the Birmingham Iron Foundry, these three parties did not contest each other's claims against the company, and that after the property of the company was sold as aforesaid, they shared equally the proceeds thereof; or, in other words, that Sweet got one-third of the proceeds of the sale. Many other things are stated in the petition, but they have only such a remote connection with the contract that it is hardly necessary to state them. We may, however, make some reference to some of them hereafter.

By the assignment of the foregoing contract neither Mulvane nor Hentig succeeded to all the rights, or interests, or duties of Coldren with respect to the rolling mill company, whatever may have been the intention of the parties. Neither Mulvane nor Hentig became the president of the company, nor a director thereof, nor even a stockholder therein, nor was either entitled to receive dividends, nor was either liable for the debts of the company. Indeed, neither of them had any interest in the affairs of the company, unless it was as the assignee of a creditor of the company. Whatever may have been intended by the assignment or expected therefrom, we shall treat it at most as only an assignment of Coldren's claim for money against the rolling mill company, with the securities in Sweet's hands to secure its collection, and Sweet's duty to collect the claim if possible. And possibly even this view of Hentig's rights under the assignment is too liberal as to him. The

contract gave to Sweet and Coldren, in some undefined manner, some indefinite number and amount of first-mortgage bonds to secure the commercial paper of the company, indorsed by Sweet and Coldren; but as the debts evidenced by such commercial paper and secured by such bonds *have long since been barred by the statute of limitations,* such bonds, as well as the debts themselves, have become defunct, so far as this transaction is concerned, and the bonds have no further office to perform. If, however, the bonds have not become absolutely defunct, but have some office to perform in some other transaction, still when the debts became barred so that neither the company, nor Sweet, nor Coldren was any longer liable for the payment of such debts, the company was entitled to have the bonds returned to it so that it might use them in such other transaction. None of the other persons were entitled to them under the contract and pleadings; certainly not Hentig. Neither Mulvane nor Hentig was ever liable to pay such debts; hence under no theory would they be entitled to the bonds. But Coldren was entitled to be repaid by the rolling mill company the sum of $13,122.39, which he had loaned to said company, and was entitled, along with Sweet, to the benefit of one of the second mortgages given by the company to Sweet; and for the purposes of this case, we shall assume, though this assumption may be questioned, that to this extent Hentig has succeeded to the rights of Coldren. Coldren, however, was never entitled to demand that Sweet should pay Coldren's claim against the rolling mill company, nor had he any right to demand that Sweet should transform his second mortgages into first mortgages, or make them prior to or more effectual than the first-mortgage bonds, or prior to or more effectual than any other liens which were prior to the liens of his second mortgages. Now it does not appear from any allegation of the petition that Sweet was ever able to realize anything upon his second mortgages, or upon any of the mortgages which he held; but all the property of the rolling mill company, except $1,000 worth, was taken to pay the debts secured by the first-mortgage bonds and the mechanics' liens; and it does not ap-

pear that said $1,000 worth of property was covered by the defendant's second mortgages. Nor does it appear that by the reception of this $1,000 by the defendant that his claim against the rolling mill company was reduced down to an amount equal to or less than the claim of Coldren against the rolling mill company; and certainly, under the contract, neither Coldren nor any assignee of his can claim anything from Sweet, until after he has received an amount sufficient to reduce his claim below that of Coldren. So far as the petition shows, the claim of Sweet against the rolling mill company still remains due and unpaid, except the $1,000 which he collected on his judgment, and still remains much in excess of Coldren's claim against the rolling mill company.

It is alleged in the petition that Huidekoper and the Birmingham Iron Foundry, who were holders of judgments rendered on the claims secured by first-mortgage bonds and mechanics' liens, paid to Sweet one-third of the proceeds of the sale of the company's property, and paid to Mrs. Sweet about $20,000, presumably out of such proceeds; but we do not think that these transactions furnish the basis for any cause of action in favor of Hentig and against Sweet; for neither Sweet, nor Coldren, nor any of Coldren's assignees, were entitled to any of such proceeds. And besides, the allegations with respect to the payment to Mrs. Sweet are too indefinite to be considered as the statement of a cause of action in favor of Hentig and against Sweet. Indeed, we do not think the petition of the plaintiff in any manner states any cause of action in favor of Hentig and against Sweet.

With this view of the case, it is unnecessary for us to express any opinion with regard to the question whether Hentig's supposed cause of action has been barred by any statute of limitations, or not.

The judgment of the court below will be affirmed.

HORTON, C. J., concurring.

JOHNSTON, J., not sitting.