Evans v. Willis, *County Judge.*

No. 304.   Opinion Filed September 25, 1908.

(97 Pac. 1047.)

1. · INDICTMENT AND INFORMATION—Presentment by Proper
   Authority.  No original prosecution can be instituted in a court
   of record in this state except by presentment of indictment by
   a grand jury, or by an information exhibited by the county
   attorney or some other officer thereto authorized by law.

2. SAME.  Where the paper writing purporting to be an informa-
   tion is not exhibited or presented by the county attorney, or some
   one authorized by law, the same being invalid, and not capable
   of being amended, the county court did not acquire any juris-
   diction of such action or prosecution.

3. PROHIBITION—Criminal   Prosecution—Lack   of   Jurisdiction.
   Upon an information purporting to have been presented by a
   private person, neither the prosecuting attorney for the county
   nor any other officer thereto authorized having exhibited same,
   the lower court having no jurisdiction to hear or determine such
   case on said information, and there being no other plain, speedy,
   and adequate remedy at law for the relator, his remedy is
   by writ of prohibition to restrain action thereon.

(Syllabus by the Court.)

Application by Sam Evans for writ of prohibition to W. T.
Willis, County Judge.   Writ awarded.

On the 24th day of July, A. D. 1908, a petition was filed in
this court by the relator, Sam Evans, against the respondent, W.
T. Willis, wherein it was alleged that, on the 22nd day of July,
A. D. 1908, there was filed in the county court of Lincoln county
a pretended criminal information, charging relator with the
crime of assault and battery; that on said date he was placed on
trial in said court, by said respondent as judge of said court, be-
fore a jury, on said charge under said information, the body of
which is in words and figures as follows:

"State of Oklahoma, Lincoln County—ss: State of Oklahoma, Plaintiff, v. Sam Evans, Defendant. Information. In the county court of Lincoln County, state of Oklahoma, on the 24th day of June, 1908, in the name and by the authority of the state of Oklahoma comes Lee Matheyer of the said county of Lincoln and gives the court to know and be informed that Sam Evans late of the aforesaid county, on the 24th day of June, 1908, in the county of Lincoln and state of Oklahoma then and there being did then and there wilfully, unlawfully, and with force and violence commit an assault and battery upon one Duncan Chishom by kicking the said Duncan Chishom forcibly and violently on the body of him, the said Duncan Chishom, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Oklahoma. [Signed] Lee Matheyer."

Said information was duly sworn to before the respondent, as acting county judge of said county, by said Lee Matheyer. Upon the back was endorsed the style of the cause and file mark, under date of the 22nd day of July, 1908, and a list of witnesses for the state. That on the same date, prior to the trial, relator filed a motion to quash the information and the warrant issued thereon, for the reason that the same had been filed by one Lee Matheyer, who is neither the county attorney of said county, nor the deputy, nor assistant county attorney, nor the Attorney General of the state, nor any one authorized by the Attorney General, nor any one in authority, and for the further reason that said information was not drawn, presented, or filed by any one acting in behalf of, or on the part of the state of Oklahoma or the county of Lincoln, but was in fact carried on by a private prosecutor. It is further alleged that, notwithstanding the illegality of said proceedings, and the want of legal information or charge, relator was compelled to go to trial, and on the 22nd day of July, 1908, was found guilty of the alleged offense by a jury in said county court; that said trial and all proceedings had under and by virtue of said pretended information were and are null and void, for the reason that the court never acquired jurisdiction over the person of the relator or the subject-matter of the controversy. Relator further alleges that

the presiding judge of said court would, unless restrained, pronounce a sentence on said relator; that relator's remedy by appeal, or by any other procedure except by writ of prohibition, was inadequate.

On the 24th day of July, A. D. 1908, a preliminary writ of prohibition was issued out of this court. On the 28th day of August A. D. 1908, respondent filed his return to said writ, wherein he alleged that relator was not illegally restrained of his liberty, as on the 1st day of July, A. D. 1908, a complaint was made to John J. Davis, county attorney of Lincoln county, Okla., and he was informed by some five different persons that Sam Evans had committed a brutal assault and battery upon one Duncan Chishom, on the 24th day of June, A. D. 1908, in the city of Chandler, Lincoln county, Okla., who stated to the county attorney that they had some 15 or 20 witnesses who saw the relator's brutal conduct in kicking and maltreating the said Chishom, and the county attorney refused to prosecute, or to O. K. a complaint against the relator, rendering as his excuse that the said relator, was a friend of his, and a good man to keep him posted on whiskey cases, and absolutely refused to start the matter and have an information or complaint filed. Thereupon several of the citizens, knowing of the brutal action of the relator, made a bond, as required by the statutes of the state of Oklahoma, and verified it, to pay the costs of the prosecution, and one Lee Matheyer went before the county judge of Lincoln county, Okla., and swore positively to a complaint and information, after said bond had been given. Thereupon a warrant was issued in due form, and delivered to the sheriff of said county on the 1st day of July, 1908, who executed same by arresting said relator, who was brought before the county court, and, the county judge being disqualified, and the counsel representing the prosecution and the defendant not being able to agree upon a judge *pro tem.*, the said W. T. Willis was elected, in accordance with section 3306, Wilson's Rev. & Ann. St. 1903, as judge *pro tem.*, to try said cause. Thereupon the cause proceeded

to trial before a jury of six men, selected as provided by law. The evidence having been introduced both by the state and the defendant, and the jury instructed as to the law, and having heard the argument of counsel for both sides, the cause was submitted to the jury for their consideration. The jury returned a verdict of guilty against the defendant, and, a motion for a new trial having been filed by defendant, the matter was set down later to hear said motion. Thereupon the preliminary writ herein was served upon the respondent.

*Hoffman & Robertson* and *Rittenhouse & Rittenhouse,* for relator.

*W. C. Reeves, Asst. Atty. Gen.,* for respondent.

WILLIAMS, C. J. (after stating the facts as above). It is the contention of the relator that the county court of Lincoln county has no jurisdiction to try him upon the information in this case. The county court is a court of record (Const. § 11, art. 7 [Bunn's Ed. § 181]). It has, concurrent with the district court, appellate jurisdiction of judgments of justices of the peace and police judges in all criminal matters, and, concurrent with justices of the peace, jurisdiction in misdemeanor cases, and exclusive jurisdiction in all misdemeanor cases of which justices of the peace have no jurisdiction; and, in criminal cases appealed from justices of the peace and police judges, there shall be a trial *de novo* on both questions of law and fact. Section 3. "An act to define the juridiction and duties of the county court," etc. Sess. Laws, 1907-08, p. 285, c. 27; Const. § 12, art. 7 (Bunn's Ed. § 183). Section 17, art. 2 (Bunn's Ed. § 26) Okla., Const., provides that "no person shall be prosecuted criminally in courts of record for felony or misdemeanor, otherwise than by presentment or indictment or by information. No person shall be prosecuted for a felony by information without having had a preliminary examination before an examining magistrate or having waived such preliminary examination. Prosecutions may be instituted in courts not of record upon a duly verified complaint." The question arises, however,

as to whether or not any person, other than the county attorney, or some one acting for him, could file this information.

An information would lie at common law for all misdemeanors, but not for a felony, it having been the policy under such law that no person should be put on trial for a capital offense, or any other crime known or understood as an offense, under said law occasioning a total forfeiture of the offender's lands or goods, or both except by indictment. This is the line of demarcation by which we are to determine whether or not at common law an offense was a felony or a misdemeanor. 4 Bl. Com. 94, 95, 310. At common law an information is defined to be a complaint or accusation exhibited against a person for some criminal offense, committed immediately against the King, or against a private person, an indictment being an accusation preferred by the oath of twelve men, and an information is only the allegation of the officer who exhibits it. 3 Bac. Abr. 635, tit. "Information." According to Mr. Bacon, there are two kinds of criminal information under the common-law procedure in England, the first being an offense immediately against the King, and was filed by the Attorney General *ex officio,* and without leave of court, The second was against private individuals, and exhibited by the masters of the crown. Informations of this character were filed as a matter of course prior to the adoption of St. 4 & 5 William and Mary, c. 18; but thereafter such information could not be filed by the masters of the crown except upon leave of the court, and then to be supported by the affidavit of the person at whose instance the same was filed, such person being required to give security for costs. 3 Bac. Abr. 635. Section 4200, Wilson's Rev. & Ann. St. 1903, provides:

"The common law, as modified by constitutional and statutory law, judicial decisions and the conditions and wants of the people, shall remain in force in aid of the General Statutes of Oklahoma; but the rule of common law, that statutes in derogation thereof shall be strictly construed, shall not be applicable to any general statute of Oklahoma; but all such statutes shall be liberally construed to promote their object."

Mr. Chitty says (1 Crim. Laws, 844) :

"Informations may be filed by the Attorney General for any offense below the dignity of a felony which tends, in his opinion to disturb the government, or immediately interfere with the interests of the public, or the safety of the crown. He most frequently exercises this power in cases of libels on government or high officers of the crown, etc. It seems, indeed, at his option to exert it when any offense occurs which may thus be prosecuted in the crown office. The Attorney General is the sole judge of what public misdemeanors he will prosecute. He may file an information against any one whom he thinks proper to select, without oath, without motion, or opportunity for the defendant to show cause against the proceeding."

It appears to have been the common and usual practice, sustained by numerous precedents, for informations to be exhibited. whether in the name of the King's Attorney General, or of the master of the crown office, for batteries, cheats, seducing a young man or woman from their parents in order to marry them against their consent, or for other wicked purposes, spiriting away a child, rescuing persons from legal arrest, perjuries, subornation of perjuries, forgery, conspiracies, and other like crimes done principally to a private person, as well as for offenses done principally to the king, and, in general or any other offenses against the public good, or against the first and obvious principles of justice and common honesty. 3 Bac. Abr. tit. "Information"; 2 Hawk. P. C. c. 26, § 1; Cole's Crim. Inf. p. 9; Com. Dig. tit. "Information"; Arch. Pl. & Ev. 69.

Mr. Cole, in his work on Criminal Information, pp. 9, 10, states:

"In cases of misdemeanor the law has intrusted the Attorney General on behalf of the crown, with a discretionary power of filing informations; and for that reason the Court of Queen's Bench will never give leave to the Attorney General, on behalf of the crown, to exhibit criminal information. He has the right to exhibit one *ex officio,* on his own responsibility and discretion. But although the Attorney General may, if he thinks fit, exhibit a criminal information *ex officio* for any misdemeanor whatever, yet

in practice he seldom does so, except when directed to do so by the House of Lords, the House of Commons, etc., when the case is of very serious nature. The usual objects of an *ex officio* information are properly such enormous misdemeanors as tend to disturb or endanger the queen's government, or affront her in the discharge of her royal functions." (46 Law Lib. 29, 30.)

In the case of *State v. Gleason,* 32 Kan. 250, 4 Pac. 366, the court said:

"At common law an information might be filed, under the English practice, against persons charged with misdemeanors, yet no rule was granted in regard to such cases except upon such evidence as would, uncontradicted, make out the offense beyond doubt. Arch. Cr. Pl. 176; *Rex v. Willett,* 6 T. R. 204; *Rex v. Williamson,* 3 B. & Ald. 582; *Rex v. Bull,* 1 Wills, 93; *Rex v. Hilbers,* 2 Chit. R. 163; *Regina v. Baldwin,* 8 A. & E. 168; *Ex parte Williams,* cited 1 Harr. Dig. 2268; 1 Chit. Cr. L. 856, 857."

There appears to be some conflict of authority as to whether or not the second class of informations have been adopted in this country. *State v. Gleason,* 32 Kan. 245, 4 Pac. 363; Bish. Crim. Pro. 144, 604, 606; *State v. Moore,* 19 Ala. 514; Wharton's Crim. Plead. & Prac. (8th Ed.) 87.

In the case of *State v. Keln,* 79 Mo. 515, it is said:

"In our state the criminal information should be deemed to be such, and such only, as in England is presented by the Attorney General and Solicitor General. This part of the English common law has plainly become common law with us. And, as with us, the powers which in England are exercised by the Attorney General and Solicitor General are largely distributed among our district attorneys, whose office does not exist in England, the latter officers would seem to be entitled, under our common law, to prosecute by information as a right adhering to their office, and without leave of court."

In the case of *State v. Moore et al.,* 19 Ala. 519, the court said:

"In England information lay against persons for misdemeanors, and were in those cases criminal proceedings. The practice of filing them existed at the common law, and may be traced to the earliest periods. Informations for offenses more immediately affecting the king, his ministers, or the state, were filed *ex officio*

by the Attorney General, while those in which a private individual was virtually the prosecutor were placed on trial by the King's coroner or master of the crown office. Each of these officers had, and the Attorney General still has, the power of thus accusing the subject at his discretion. But St. 4 & 5 William and Mary c. 18, reduced the coroner to a mere ministerial officer, and the informations exhibited by him in the crown office were subjected entirely to the Court of the King's Bench. Criminal informations at this day (in England) are of two kinds: Those fixed *ex officio* by the Attorney General, at his sole discretion, and those presented by the coroner or master of the crown office, by leave of the court according to the statute. Chitty's Crim. Law, 843-845, where the authorities are cited. * * * St. 4 & 5 William and Mary is not in force in this state, and we have none like it that can possibly affect this case. Consequently the discretion of the state to proceed, or not to proceed, for the forfeiture is not placed in the hands of any of our courts, and it has already appeared that they cannot derive it from the common law. The *scire facias* to repeal the King's letters patent, for any cause of forfeiture that may have occurred, is analogous to the case before us. In that case, also, there was a discretion to claim or to waive the forfeiture. In such cases, 'previously to suing out the writ,' a petition or memorial must be presented to his Majesty, and a warrant obtained thereon to the Attorney General, upon which he will grant his fiat for suing it out; but it is said that, when a patent is granted to the prejudice of a subject, the King of right is to permit, upon petition, to use his name for the repeal of it. 2 Tidd's Prac. 1094. The case before us, however, is one not affecting the rights of any particular individual. It is clear that the state here is the source of all such franchises, to be granted or withheld by the Legislature at its discretion. But if, under our law, a forfeiture must be enacted for every act done or omitted which, in strictness, is a cause of forfeiture, then our law is obviously defective; and it is not only defective, but wrong, if this high discretion may be exercised by persons who, with regard to it, are not the representatives of the state. The language of the act plainly shows that the Legislature did not intend to confide this discretion to the solicitors; but, on the contrary, it was the manifest intention to withhold it from them. They were to act 'at the instance of the state,' which excludes the idea of their acting upon their own will or discretion."

Clark in his Criminal Procedure, page 128, says:

"Under the common law of England informations were of two kinds. The first was filed by the Attorney General, as a rule, for offenses more immediately against the King, or the public safety; but such an information could be filed by him for any other misdemeanor, though an offense more particularly against an individual. The second was filed by the masters of the crown office, and it was the usual mode or proceeding by information for offenses against individuals. Formerly both of these informations could be filed without leave of court, and without further oath or affidavit than the oath of office of the officer preferring it. By an early English statute, however, which is old enough to have become a part of our common law, if applicable to our conditions, it was provided that informations by masters of the crown office could only be filed by leave of court, and that they should be supported by the affidavit of the person at whose suit they were preferred. The law remained that informations filed by the Attorney General (and, as already stated, he could file them for any misdemeanor) need not be verified, and that he was the sole judge of the necessity or propriety of filing them. Leave of court was not necessary. Nor was the accused entitled to opportunity to show cause against the proceeding. The Attorney General usually acted on affidavits of witnesses laid before him, but this was not necessary. There is some authority for the proposition that the kind of information to be used at common law in this country is that which in England was filed by the masters of the crown office, and that this is the kind contemplated by statutes which show no intention to the contrary; and if this be so, leave of the court and affidavit would be necessary. But by the better opinion the other kind of information is the one in use with us. 'In our states the criminal information should be deemed to be such, and such only, as in England is presented by the Attorney or Solicitor General. This part of the English common law has plainly become common law with us. As, with us, the powers which in England were exercised by the Attorney or Solicitor General are largely distributed among our district attorneys, whose office does not exist in England, the latter officers would seem to be entitled, under our common law, to prosecute by information, as a right adhering to their office, and without leave of court.' "

In this state it is made the duty of the county attorney, and not the Attorney General, to appear in the district courts of their

respective counties and defend on behalf of the state or his county all actions or proceedings, civil or criminal, in which the state is interested or a party; and, whenever the venue is changed in any criminal case, or in any civil action or proceeding in which his county or the state is interested or a party, it is the duty of the county attorney of the county where such indictment is found, or the county interested in such civil action or proceeding, to appear and prosecute such indictment, and to prosecute or defend such civil action or proceeding in the county to which the same may be changed. Wilson's Rev. & Ann. St. Okla. 1903, § 1289. And whenever there shall be no county attorney for the county, or when the county attorney shall be absent from the court, or unable to attend to his duties, the district court may, if it deems it necessary, appoint by an order entered on the minutes of the court some suitable person to perform for the time being the duties required by law to be performed by the county attorney, and the person so appointed shall thereupon be vested with all the powers of such county attorney for that purpose. Id. § 1293, Section 17, art. 2, Const. (Bunn's Ed. § 26), *supra*, providing that "no person shall be prosecuted criminally in courts of record for felony or misdemeanor, otherwise than by presentment or indictment or by information," enabling a felony to be prosecuted by information, which under the common law could only be prosecuted by indictment, did not extend the rule so that a person could be put on trial in a court of record for a felony on information verified and exhibited only by a private prosecutor. To hold that in courts of record such prosecutions for misdemeanor could be maintained by such an information would establish two rules of practice in such courts for exhibiting informations, one for misdemeanors and another for felonies. When the same officer prosecutes for the state in all such cases, such practice is not presumed to have been intended by the framers of the Constitution.

It is not necessary to determine whether or not article 4, of the amendments to the Constitution of the United States, providing that "the right of the people to be secure in their persons,

houses, papers and effects, against unreasonable searches and seizures, shall not be violated and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized," changes the common-law rule as to information in this country, for section 5306, Wilson's Rev. & Ann. St. 1903, provides that "the county attorney shall subscribe his name to informations filed in the probate or district court and indorse thereon the names of the witnesses known to him at the time of filing the same. He shall also indorse thereon the names of such other witnesses as may afterwards become known to him, at such time before the trial as the court may by rule prescribe," and that such information should be verified "by the oath of the prosecuting attorney, complainant or some other person," it being provided that when the information in any case is verified by the county attorney it shall be sufficient, if the verification be upon information or belief. This section enlarges the common-law rule. Prosecutions originally cognizable in courts of justices of the peace need not be begun by such an information. Const. art. 2, § 17 (Bunn's Ed. § 26). But when exhibited in such justice court by any other person than by the county attorney, or his assistant, or deputy, or some other person authorized by law, the justice of the peace may require of such private prosecutor a bond for the costs of such prosecution. Const. art| 7, § 18 (Bunn's Ed.§ 190) ; Wilson's Rev. & Ann. St. 1903, §§ 5305, 5306, 5307. The provision being made that criminal offenses, including both felony and misdemeanor, may be originally prosecuted by information in courts of record, and in courts not of record, which includes only misdemeanors, by complaint, an information is clearly distinguished from a complaint. An information exhibited under the common law, by leave of the court, by a private prosecutor is, in effect, merely a complaint as termed in our Constitution.

Hence, since the adoption of our state Constitution, no person can be prosecuted criminally in any court of record in this state for felony or misdemeanor other than by presentment of an

indictment by a grand jury, or by information exhibited by the county attorney or other officer authorized by law. The information filed in this case by the private prosecutor, who was neither the county attorney nor any officer authorized by law, was void.

The next question arises as to whether or not the writ of prohibition herein sought is the proper remedy. Such writ will not be issued on account of errors or irregularities in the proceedings of a court having jurisdiction, or on account of insufficiency of averment or pleading, or upon matters of defense which may be properly raised in the lower court. *Ex Parte Branch*, 63 Ala. 383; *Epperson v. Rice*, 102 Ala. 668, 15 South. 434; *Clark v. Superior Court*, 55 Cal. 199; 16 Enc. Pl. & Pr., p. 1126, and authorities cited in footnotes 2-4. The better rule appears to be that the writ will be issued where the lower court appears to be without jurisdiction upon the record and admitted facts. 16 Enc. Pl. & Pr., p. 1128, and authorities cited in footnotes 1 and 2. Such extraordinary writ will not be awarded when the ordinary and usual remedies provided by law, such as appeal, writ of error, *certiorari* or other modes of review or injunction, are available. *Ex parte Smith*, 23 Ala. 94; *Ex parte Smith*, 34 Ala. 455; *Ex parte Scott*, 47 Ala. 609; *Ex parte Reid*, 50 Ala. 439; *Ex parte Mobile, etc., Ry. Co.*, 63 Ala. 349; *Weaver v. Leatherman*, 66 Ark. 211, 49 S. W. 977; 16 Enc. Pl. & Pr., p. 1130, and authorities cited in footnote 2. There is no general rule by which the adequacy or inadequacy of a remedy can be ascertained, but the question is one to be determined upon the facts of each particular case. The writ will not be issued on account of the inconvenience, expense, or delay of other remedies, but will be granted where the remedy available is insufficient to prevent immediate injury or hardship to the party complaining, particularly in criminal cases. 16 Enc. Pl. & Pr., p. 1131, and authorities cited in footnotes 1 and 2. It appears that in criminal cases neither appeal, *habeas corpus,* nor *certiorari* would be a plain, speedy, or adequate remedy. 16 Enc. Pl. & Pr., p. 1132, and authorities cited in footnote 1. The un-

disputed facts showing the indictment upon which the prosecution was based to be absolutely void, the writ of prohibition was declared to be the proper remedy. _Bruner v. Superior Court_, 92 Cal. 239, 28 Pac. 341; _People v. Spiers_, 4 Utah, 385, 10 Pac. 609, 11 Pac. 509; _People v. Carrington_ 5 Utah, 531, 17 Pac. 735: _People·v. Southwell_, 46 Cal. 141; _People v. Colby_, 54 Cal. 37; _People v. Hunter_, 54 Cal. 65; _Levy v. Wilson_, 69 Cal. 105, 10 Pac. 272; _Ex parte Brown_, 58 Ala. 542; 16 Enc. Pl. & Pr., p. 1132, and authorities cited in footnotes 1 and 2.

It appearing as a matter of record that the information exhibited in the court below was by a private prosecutor, and it being admitted in the answer of the respondent that the county attorney had refused to file an information against the relator, and no other officer authorized by law having filed such information, the county court is without jurisdiction to try said cause. If judgment is pronounced against the relator upon the verdict of the jury, it might result in his being incarcerated in jail pending an appeal. An appeal in such an instance would not be such an adequate and speedy remedy as to prevent immediate injury or hardship to the relator. When it appears to the court having jurisdiction to issue the writ of prohibition that the lower court, under any conditions, is without jurisdiction to try the accused, upon the alleged information filed, with all amendments permitted under che law considered as made, to require him to invoke the remedy of appeal, occasioning delay and necessitating a supersedeas bond, or resulting in his being confined in jail pending the determination of his appeal, when the same conclusion as to the lower court being without jurisdiction will be reached, would work an unnecessary and unreasonable hardship upon the accused.

The writ of prohibition is awarded.

All the Justices concur.