### TERRITORY v. CUTINOLA.

*(Supreme Court of New Mexico. 1887.)*

1. STATUTORY CONSTRUCTION—REPEAL OF REPUGNANT PROVISIONS.
    Comp. Laws N. M. 1884, § 881, makes it a misdemeanor for the proprietor or superintendent of a public house where liquor is sold to permit games of cards, dice, etc., to be played on his premises. Section 884 provides for the prosecution of such offenses by indictment. Section 2490, enacted subsequently, authorizes the prosecution of all misdemeanors by information. *Held*, that sections 881 and 884 are general, and not special, statutes, and that the effect of section 2490 is to repeal so much of section 884 as is repugnant to its provisions, and that consequently the offense created by section 881 may be prosecuted by information.

2. INFORMATION—FILED EX OFFICIO BY PROSECUTING ATTORNEY—AFFIDAVIT.
    Under the rules of the common law, as adopted in the various states, it is not essential that an information filed *ex officio* by a prosecuting attorney, in the prosecution of a misdemeanor, should be supported by affidavit.

3. SAME—OATH OF OFFICE—CONSTITUTIONAL LAW.
    Under Const. U. S. 4th Amend., protecting the people against unreasonable searches and seizures, and providing that no warrant shall issue but upon probable cause, supported by oath or affirmation, it is not essential that an information, filed *ex officio* by a prosecuting attorney in the prosecution of a misdemeanor, should be sustained by affidavit other than his oath of office.

Appeal from district court, Bernalillo county.

*E. A. Fiske* and *H. L. Warren*, for appellant.  *William Breeden*, for appellee.

HENDERSON, J. Appellant was prosecuted by information in the court below for permitting gaming in a public house of which he was proprietor, under section 881, Comp. Laws. He was tried by a jury and fined $50. From this judgment of conviction defendant appealed. The only question presented is, can crimes of the class charged be lawfully prosecuted by information? This question was fully argued and elaborately considered by the district judge, on motion to quash the information. His opinion was reduced to writing, and is a very clear and, we think, correct determination of the question, and we adopt it as the opinion of this court. The opinion is as follows:

"This is a motion filed by defendant to quash the information for two reasons: (1) Because the offense cannot be prosecuted by information in the district court, but must be by indictment. (2) Because the information is not made upon oath or affirmation showing probable cause for the prosecution.

"The information is filed by the district attorney, *ex officio*, and is supported by an affidavit made by himself, stating the facts to be true according to his information and belief.

"Counsel have exhibited great zeal, learning, and research, in the preparation and presentation of the questions arising upon this motion, and have fairly overwhelmed the court with arguments, briefs, and books in support of their respective positions. I have listened to the arguments attentively and patiently, read the briefs carefully, and examined the authorities as thoroughly as time and the press of other business would permit. It is but a just recognition of the ability, labor, and diligence of counsel to say that I am satisfied

the whole ground has been covered, and all the law bearing upon the case in any manner has been found, examined, and presented at this hearing.

"The first ground of the motion proceeds upon the theory that the section of the statute upon which this prosecution arises is a special statute with a limited application, and that the latter act authorizing the prosecution of all misdemeanors by information does not affect it. Section 881, Comp. Laws 1884, provides that if any proprietor or superintendent of any public house where spirituous or malt liquors are sold, shall permit any games to be played with cards, dice, etc., such person on conviction shall be fined. Section 882 prohibits all persons from frequenting or keeping any gaming table under the penalty of a fine. Section 883 prohibits all persons from betting at any gaming table, etc. Section 884 provides that for any violation of the provisions of the foregoing sections the person so offending shall be presented before some justice of the peace, or by indictment by a grand jury, etc. These sections are copied from the Compiled Laws of 1865, into the compilation of 1884.

"In 1872 the legislature passed an act authorizing the prosecution of all misdemeanors by information. In 1874 this act was amended, giving justices concurrent jurisdiction, and as amended it is found in the Compiled Laws of 1884 as section 2490.

"That section 881, defining the offense for which this prosecution is instituted, is a general statute, is very clear. It affects all persons alike who by their conduct bring themselves within its provisions. A general statute is defined to be one which affects all the people, or all of a particular class. Bish. Writ. Law, § 42. When it concerns a class in distinction from individuals it is treated as general. Sedg. St. & Const. Law, 24, 25. Bish. Writ. Law, § 42c. A private or special statute (and these words appear to be used interchangeably) is one which affects only particular individuals or things. Bish. Writ. Law, § 42d. The section under consideration does not refer to any particular individual, but to all that class of persons who permit games to be played with cards, etc., in their houses where spirituous or malt liquors are sold. Section 884 is a general statute also, and provides a mode of procedure for the trial and punishment of all persons of the class mentioned in section 881. It says that such persons shall be indicted by the grand jury. But section 2490, passed long after the passage of section 884, provides that all misdemeanors may be prosecuted by information. This is a misdemeanor. Section 2490 is later in time of enactment, and is repugnant to the provisions of section 884, and under a fundamental rule of construction, works a repeal of section 884, to the extent of the repugnancy, or, at least, it works an amendment of that section, so that both, taken together, provide for the prosecution of misdemeanors of the kind mentioned in the sections preceding section 884, by indictment and information. as concurrent remedies. Sedg. St. & Const. Law, 104. It follows from what has been said, that an information may be resorted to in this class of cases.

"The second ground of the motion presents a question of greater difficulty. It resolves itself into two questions: *First.* Must an information be supported by an affidavit? And, *second,* if so, is the affidavit in this case sufficient?

"It was conceded in the argument that if the first proposition should be answered in the affirmative, the second must be answered in the negative, *i. e.*, if it should be held that an affidavit was necessary, then the affidavit filed in support of the information in this case must be held insufficient. The statute does not undertake to define an information, or prescribe its form or contents. We must therefore look to the common law to ascertain what it is and what its requisites, in the particular in question, are. At common law an information is defined to be an accusation or complaint exhibited against a person for some criminal offense, either immediately against the king, or against a private person, which from its enormity or dangerous tendency the public good required should be restrained and punished, and differs princi-

pally from an indictment in this: that an indictment is an accusation found by the oath of 12 men, whereas an information is only the allegation of the officer who exhibits it. 3 Bac. Abr. 635, tit. 'Informations.' Bacon says there were two kinds of criminal informations in use in England under the common-law procedure. The first was for offenses more immediately against the king, and was filed by the attorney general, *ex officio*, and without leave of court. The second was for offenses against private individuals, and was exhibited by the masters of the crown. Prior to the adoption of the statute of 4 and 5 Wm. & Mary, c. 18, informations of this class were filed as a matter of course; but under the provisions of this statute such informations could not be filed by masters of the crown, except upon leave of court, and were required to be supported by the affidavit of the person at whose suit the same was filed, and such person was also required to give security for costs. 3 Bac. Abr. 635.

"It is contended here that the second class has been adopted in this country; that in England the first class could only be filed in cases where the misdemeanor was committed against the king's person, his prerogative, his revenue, his officers, or the public safety, and that as we have no king, nor any person exercising kingly powers and prerogatives, the first class of informations has no application here. In support of this position counsel cite: 4 Bl. Comm. 307–309; 1 Chit. Crim. Law, 848–506; *Ex parte Burford*, 3 Cranch, 448; *State* v. *Gleason*, 32 Kan. 245, 4 Pac. Rep. 363; Arch. Crim. Pl. & Pr. 69, 70. Is this position sound? It may be admitted that, for the misdemeanors of the kind mentioned, the attorney general could, and did, file informations, but was he limited to that class? Could he not file an information *ex officio* upon the commission of a misdemeanor of either class? Blackstone, p. 309, *supra*, (after stating the two kinds of informations, and that the first are properly and truly the king's own suits,) says: 'The objects of the king's own prosecutions, filed *ex officio* by his own attorney general, are probably such enormous misdemeanors as peculiarly tend to disturb or endanger his government, or to molest or affront him in the regular discharge of his functions.' Coke, Chitty, and Bacon, as cited above, sustain this statement of the power of the attorney general, and that it was the practice for all other informations to be filed by the master of the crown. But it may be doubted whether these authors state the whole law on the subject on the pages cited. Blackstone seems to think that the attorney general was limited to the filing of informations for offenses against the king. But Chitty says (1 Crim. Law, 884:) 'Informations may be filed by the attorney general for any offense below the dignity of felony, which tends, in his opinion, to disturb the government, or immediately interfere with the interests of the public, or the safety of the crown. He most frequently exercises this power in cases of libels on governments or high officers of the crown, etc. He seems, indeed, at his option to exert it when any offense occurs which may thus be prosecuted in the crown office. The attorney general is the sole judge of what public misdemeanors he will prosecute. He may file an information against any one whom he thinks proper to select, without oath, without motion or opportunity for the defendant to show cause against the proceeding.' Lord Bacon says, upon the authority of Mr. Sergeant Hawkins, that it was 'every day's practice, agreeable to numberless precedents, to exhibit informations, either in the name of the king's attorney general, or of the master of the crown office, for batteries; cheats; seducing a young man or woman from their parents in order to marry them against their consent, or for other wicked purpose; spiriting away a child; rescuing persons from legal arrest; perjuries; subornation of perjuries; forgery; conspiracies, and other like crimes done principally to a private person, as well as for offenses done principally to the king, * * * and in general, or any other offenses against the public good, or against the first and obvious principles of justice and common honesty.' 3 Bac. Abr. tit. 'Informations,' B; 2 Hawk. P. C. c. 26, § 1. Mr. Cole, in his work upon Criminal Informations, at page 9, says: 'The attorney general may exhibit

an *ex officio* information for any misdemeanor whatever,' and cites, in support of this statement, Com. Dig. tit. 'Information,' A; Bac. Abr. tit. 'Information,' A; 2 Hawk. c. 26; Arch. Pl. & Ev. 69. On page 10, the author continues: 'In cases of misdemeanor the law has intrusted the attorney general, on behalf of the crown, with a discretionary power of filing informations; and for that reason the court of queen's bench will never give leave to the attorney general on behalf of the crown to exhibit criminal information. He has the right to exhibit one *ex officio*, on his own responsibility and discretion.' 'But although the attorney general may, if he think fit, exhibit a criminal information, *ex officio*, for any misdemeanor whatever, yet in practice he seldom does so except when directed to do so by the house of lords, the house of commons, etc., when the case is of a very serious nature. The usual objects of an *ex officio* information are properly such enormous misdemeanors as tend to disturb or endanger the queen's government, or affront her in the discharge of her royal functions.' Cole, Crim. Inf. 10, found in 46 Law Lib. 29, 30.

"This is sufficient to show that Blackstone stopped short of stating the full power of the attorney general in this particular, at common law, and sufficient, I think, to show that the right of the attorney general to file informations for misdemeanors was unlimited, although the practice was not to call the right into exercise, except in cases of high misdemeanor. In *State* v. *Gleason*, 32 Kan. 245, 4 Pac. Rep. 363, the court says that, 'at common law, an information might be filed against persons charged with misdemeanors, yet no rule was granted in such cases except upon evidence sufficient to make out the offense beyond doubt.' The court, evidently, had in mind the second class of informations, because Arch. Pl. & Ev. 76, and 1 Chit. Crim. Law, 856, are cited where the statute of 4 and 5 Wm. & Mary, c. 18, concerning that class of informations, is discussed. The court discusses the essentials of a common-law information in passing upon a statute of that state which required informations to be verified by affidavit, but which authorized an affidavit on information and belief. They hold the statute void, because it is in conflict with their constitution, and then decide, in effect, that the kind of information meant by the Kansas statute was the kind in use in England by the masters of the crown subsequent to the adoption of the statute of Wm. & Mary, *supra.*

"This case seems to stand alone on the position that the second class of informations was adpoted in this country. In *State* v. *Kelm*, 79 Mo. 515, it is said, quoting from Bishop: 'In our states the criminal information should be deemed to be such, and such only, as in England is presented by the attorney or solicitor general. This part of the English common law has plainly become common law with us. As with us the powers which in England were exercised by the attorney or solicitor general, are largely distributed among our district attorneys, whose office does not exist in England, the latter officers would seem to be entitled, under our common law, to prosecute by information, as a right adhering to their office, and without leave of court.' Citing 1 Bish. Crim. Proc. § 144; Whart. Crim. Pl. & Pr. (8th Ed.) § 87. See, also, 1 Bish. Crim. Proc. § 604. The second class of informations seems not to have been adopted in this country. 1 Bish. Crim. Proc. § 606; *State* v. *Moore*, 19 Ala. 514. I am unwilling to adopt the view of the Kansas court when opposed by such standard authorities upon criminal law and procedure as Bishop and Wharton.

"But it is said that, even if the information adopted in this country be the kind exhibited by the attorney general in England, and even if our district attorneys have the same power under our system as at the common law, yet the fourth amendment to the constitution of the United States requires that all accusations upon which warrants of arrest are to issue shall be supported by affidavit. The amendment is as follows: 'The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no warrants shall issue but

upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or thing to be seized.' In the case of *U. S.* v. *Tureaud*, 20 Fed. Rep. 621, it was held that this amendment changed the common-law information, by introducing into it a new element, viz., an affidavit, thus making the informations in this country partake of the requisites of both classes of criminal informations in England. The facts of that case show that an information had been filed before a commissioner of the United States, that it was supported by an affidavit of a private person, stating that such person believed the matters and things stated in the information to be true. Whether the information containing the facts which the affiant believed to be true was filed by an officer authorized to do so, does not appear, and can only be gathered inferentially from the opinion. But conceding that the information was filed by the proper officer, the question, and the only question, properly before the court for decision, was the sufficiency of the affidavit, and not, as in this case, whether an information could in any court be filed without an affidavit. The court argues at some length to show that the fourth amendment acted upon the procedure by information, and created a new rule requiring something more than the mere *ipse dixit* of the attorney general, to authorize the issuance of a warrant, and concludes that there is no officer in the federal government analogous to the British attorney general, and that, therefore, all informations should be supported by affidavit. All of this decision, except that which holds an affidavit upon belief insufficient, is the mere *dictum* of the judge, and cannot be regarded as authority.

"It is insisted by the district attorney that the fourth amendment is not in force in this territory; that it is only a limitation upon the power of the United States courts. No authorities have been cited to sustain this position, and I am persuaded that it is not tenable. I am inclined to adopt the view of counsel for the motion, that this amendment is operative here, and is a limitation upon our legislation and courts, because, as was said by counsel, to hold this amendment a restriction upon congress, and yet not a restriction upon a government created by congress, would be a contradiction of terms. But while believing that this amendment is operative here, I by no means admit the position of counsel for the motion, backed by the decision in 20 Fed. Rep. *supra*, that it introduces a new rule in these cases, or that it requires anything more, in order to the prosecution of misdemeanors by information, than was required at common law. Judge Story says that 'this amendment seems indispensable to the full enjoyment of the rights of personal security, personal liberty, and private property,' and that 'it is little more than the affirmance of a great constitutional doctrine of the common law.' 2 Story, Const. § 1902. From the reasoning which follows in the same section, it is manifest that he thought it was nothing more than an affirmance of the doctrines of the common law; for he says: 'Although special warrants upon complaints under oath, stating the crime and the party by name, against whom the accusation is made, are the only legal warrants upon which an arrest can be made according to the law of England, yet a practice had obtained of issuing warrants for all persons of a particular class, authorizing the officers to arrest all persons suspected, without naming or describing any particular person. In the year 1763 the legality of these general warrants came before the king's bench for solemn decision, and were held void for uncertainty.'

"If this amendment was indispensable to the full enjoyment of personal rights and security, the position of Judge Story, that it was an affirmance of the doctrines of the common law, needs no argument to support it, for it was the boast of the old lawyers and judges that the common law was the perfection of reason, and the bulwark of the rights of person and property of Englishmen. And if in England a legal warrant could not be issued, except

upon oath stating the crime and person to be apprehended by name, and if this was so by reason of the restriction of the common law, then the fourth amendment is nothing more than a constitutional declaration of the common-law rule, and it does not in any sense add anything to the essentials of a common-law information. If an oath was a necessary prerequisite, at common law, to the issuance of a warrant, and if the attorney general, by filing an information *ex officio*, could cause a warrant to be issued, then the only oath necessary was the oath of office of the attorney general; and if our district attorneys occupy the same relative position to the courts of this country as did the attorney general of England to the courts of that country, then an information filed by the district attorney *ex officio* will authorize the issuance of a warrant, both at common law and under the constitution; and the oath of office of the district attorney, as in this case, is a sufficient compliance with the fourth amendment to the constitution of the United States; and if he files the information as district attorney, it is not necessary for him to state in the body of the information that he files it on his oath of office. *State* v. *Sickle*, Brayt. 132.

"It follows that it is not necessary to support an information filed, *ex officio,* by the district attorney, with an affidavit, and the motion is overruled."

Finding no error in the record, the judgment of the court below is affirmed.

LONG, C. J., and HENDERSON, J., concur. REEVES, J., did not sit in this case.