```
54  245
93  161
```

[No. 6,989.]

## McDONALD v. PATTERSON.

CONSTITUTIONAL LAW—STREET IMPROVEMENTS—SAN FRANCISCO. — Section 19 of art. 11 of the Constitution is not a provision which requires legislation to enforce it; and the provisions of the Act of April 1st, 1872, relating to street improvements in San Francisco, which authorize the Superintendent of Streets to execute contracts for such improvements—in advance of the levy and collection of the assessment—are inconsistent with the section referred to, and ceased to be operative on the 1st day of January, 1880.

APPLICATION for a writ of mandamus.

*Shafter, Parker & Waterman*, for Plaintiff.

*John L. Murphy*, for Defendant.

Department No. 2, THORNTON, P. J.:

This is an application for a writ of mandate, commanding the defendant, who is Superintendent of Streets, Highways and

Squares for the City and County of San Francisco, to execute, in his official character, a contract for the construction of a brick sewer in the northerly and southerly half of the crossing of Van Ness Avenue and Pine Street, to connect in the center of said crossing with the sewer at present therein, so as to form a full crossing.

It appears from the facts stated in the petition of McDonald, (which are not denied) that on the 29th of December, 1879, the Board of Supervisors of the City and County of San Francisco adopted a resolution of intention to order the street work above designated; and that thereafter such proceedings were had, that a contract for doing the work referred to was on the 2nd of February, 1880, regularly awarded to the petitioner; that he (the petitioner) entered into and signed such contract containing the terms required by law, and did all other things which he was bound to do in the premises, and on the 9th day of February, 1880, he presented the contract so signed by him, with the proper bonds executed by himself and sureties, and requested the Superintendent, Patterson, to execute the contract on his part; which that officer refused to do, on the ground that he was forbidden by § 19 of art. 11 of the new Constitution from executing such contract.

The portion of the section of the Constitution referred to, which relates to this matter, is in these words:

"No public work or improvement of any description whatsoever shall be done or made, in any city, in, upon, or about the streets thereof, or otherwise, the cost and expense of which is made chargeable or may be assessed upon private property by special assessment, unless an estimate of such cost and expense shall be made, and an assessment in proportion to benefits on the property to be affected or benefited shall be levied, collected, and paid into the city treasury before such work or improvement shall be commenced, or any contract for letting or doing the same authorized or performed."

It is conceded that the cost and expense of the sewer to be constructed under the alleged contract is, by the terms of the statute under which this contract was awarded, chargeable and must be assessed upon private property by special assessment. Of this meaning of the statute we entertain no doubt.

It is contended before us that the street law, Act of April 1st, 1872, (see Stats. 1871–2, p. 804) is continued in force by the 1st section of art. 22 of the Constitution, inasmuch as it is only inconsistent with provisions of the Constitution which require legislation to enforce them; that the act referred to is a system for the improvement of the streets, and the intention manifested by the section of the Constitution referred to is that the system under this act of the Legislature shall be operative, until the Legislature shall adopt another system under the Constitution, observing in such system the prohibition of the 19th section of art. 11; that should the Legislature, however, fail to adopt such new system, the former one ceases to be of force on the 1st day of July, 1880.

This view is very ingeniously urged in the brief of the learned Attorney of the city and county, furnished since the oral argument, and has been very fully considered by the Court.

The section of art. 22 referred to, declares that all laws in force at the adoption of this Constitution, not inconsistent therewith, shall remain in full force and effect until altered or repealed by the Legislature, and that the provisions of all laws which are inconsistent with it shall cease upon the adoption thereof, except as to such laws which are inconsistent with the provisions of the Constitution which require legislation to enforce them. This latter class of laws remains in force until the 1st of July, 1880, unless sooner altered by the Legislature.

In the construction of this Constitution, the rule expressed in § 22, art. 1, must always be regarded. That section declares that " the provisions of this Constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise."

Now, in the light of this rule, laid down in words so clear and terms so imperative, we will examine the sections above referred to.

The language of § 19 of art. 11 is both mandatory and prohibitory in its character. It is clear and unambiguous. It is difficult to see that it could have been made stronger in its words of command and prohibition. What words more vigorous or more appropriate to their manifest purpose could have been found in

the whole compass of the English tongue, we are at a loss to determine. It says, as plainly as words can disclose: "We command that no such work as that referred to shall at any time be done, except as herein set down ; and we prohibit any such work from being done at any time in any other way." It is mandatory and prohibitory to every department of the Government, and every officer of each department. By its very terms it is binding upon all, and goes into effect as soon as the Constitution becomes the organic law, as it is strongly prohibitory. We could not hold otherwise, without disregarding the plain meaning of words, and the rule laid down for its interpretation in the 22nd section of the 1st article.

In our opinion, this section (19 of art. 11) requires no legislation to enforce it ; and further, that the provisions of the Act of April 1st, 1872, authorizing the Superintendent of Streets, etc., of the City and County of San Francisco to execute the contract under consideration, ceased to be operative on the 1st day of January, 1880, as inconsistent with the section referred to.

From such a construction, it follows that the alternative writ issued heretofore must be quashed, and the proceeding dismissed. So ordered.

MYRICK, J., and SHARPSTEIN, J., concurred.