[No. 8,363.—In Bank.]
Aug. 23, 1882.

## PATRICK DONAHUE *v.* R. J. GRAHAM, SUPERINTENDENT, ETC.

MUNICIPAL CORPORATION—STREET IMPROVEMENT—CONSTITUTIONAL LAW—STREET LAW OF SAN FRANCISCO.—The provisions of the Act of April 1, 1872, relating to street improvements in San Francisco, which authorize the Superintendent of Streets to execute contracts for such improvements in advance of the levy and collection of the assessment, are inconsistent with Section 19 of Article xi. of the Constitution (which is self-executing), and therefore ceased to be operative on the first day of January, 1880.

ID.-ID.—ID.—ID.—(McKINSTRY J., and SHARPSTEIN, J., dissenting.) The street law of San Francisco, being part of the Charter, was not repealed by the adoption of the present Constitution, but will continue in force so long as the city and county continue under its existing organization.

APPLICATION for writ of *mandamus* to the defendant, as Superintendent of Public Streets, requiring him to sign and enter into a contract for street improvements awarded to the plaintiff.

*D. Lake, Wallace, Greathouse & Blanding*, for Plaintiff.

Is the "street law" of San Francisco affected by the present Constitution? (Act 1872, p. 804.) This "street law" is an integral portion of the City Charter. ("Consolidation Act," Art. iv.) In *McDonald* v. *Patterson*, 54 Cal. 245, the counsel for McDonald, who sought to uphold the "street law," openly conceded that it was so affected. He claimed merely that the law would survive until July 1, 1880, and the single question made was, whether the street law had already ceased upon the adoption of the Constitution, or would continue in force until July 1, 1880, at which latter period it was conceded on all hands that it was no longer operative.

In this view it became necessary to contend, and it was contended in support of the "street law," that the nineteenth section of the eleventh article of the Constitution was a section which required legislation to put it in force. Plainly this position was untenable. It is apparent, therefore, that the position into which the counsel for McDonald allowed

himself to be driven, was a virtual surrender of his case; and the decision of the Court in Department Two, in view of this concession by the counsel, was correct—no other conclusion was possible.

But it is our purpose to maintain that the " street law" was not affected by the present Constitution at all—that it survived the adoption of the Constitution and survived the first day of July, 1880; and that the only operation the Constitution can have in this respect is upon street improvement laws, to be enacted in the future—upon city charters to be framed and adopted hereafter.   To maintain this proposition, we have only to cite your Honors to your own decisions rendered in Bank subsequently to the decision in *McDonald* v. *Patterson*.   (*Desmond* v. *Dunn*, 55 Cal. 242 ; *Wood* v. *Board of Election Commissioners*, 58 id. 561.)   The import of both these decisions is that the " Consolidation Act," in its entirety, is in force in San Francisco.

*J. F. Cowdery*, for Defendant.

*McDonald* v. *Patterson*, 54 Cal. 245, was approved in *Hyatt* v. *Allen*, id. 361, and *Ewing* v. *Oroville M. C.*, 56 Id. 654. Nothing can be found in *Desmond* v. *Dunn*, or in *Wood* v. *Board of Election Commissioners*, conflicting with *McDonald* v. *Patterson*.

MYRICK, J.:

For the reasons given by the Court, in *McDonald* v. *Patterson*, 54 Cal. 245, the demurrer is sustained.

MORRISON, C. J., and ROSS, THORNTON, and McKEE, JJ., concurred.

McKINSTRY, J., dissenting:

I dissent.   Article xi. of the Constitution is headed, "Cities, Counties, and Towns."   Sections one, two and three relate to counties; Sections four and five, to counties and " townships;" Sections nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen and eighteen, to cities, counties, towns and townships.   Sections six, seven, eight and nineteen, treat especially of *cities;* in which are included the municipalities

known as "cities and counties," and "towns." It is apparent that the sections last enumerated, applying, as they do, to the same subject-matter, are to be read together as providing a scheme or system. The separation into sections is arbitrary, adopted for convenience of reference, and by it no force is added to the suggestion that one section is to be given independent effect, without any consideration of the language of the other sections which constitute the context. Doubtless the provisions of the Constitution are "mandatory and prohibitory." But it is necessary, in the first instance, to ascertain—as well by reference to other provisions bearing upon the subject, as by resort to all other means within our reach—the *meaning* of a particular provision of the Constitution. Only thus can we place ourselves in a position to determine what it is that is commanded or prohibited by such provision.

The first sentence of the nineteenth Section of Article xi. of the Constitution of the State reads: "No public work or improvement of any description whatsoever shall be done or made, in any city, in, upon, or about the streets thereof, or otherwise, the cost and expense of which is made chargeable, or may be assessed, upon private property by special assessment, unless an estimate of such cost and expense shall be made, and an assessment, in proportion to benefits, on the property to be affected or benefited, shall be levied, collected, and paid into the city treasury before such work or improvement shall be commenced, or any contract for letting or doing the same authorized or performed."

Section 6 of the same Article reads: "Corporations for municipal purposes shall not be created by special laws; but the Legislature, by general laws, shall provide for the incorporation, organization, and classification, in proportion to population, of cities and towns, which laws may be altered, amended, or repealed. Cities and towns heretofore organized or incorporated may become organized under such general laws whenever a majority of the electors voting at a general election shall so determine, and shall organize in conformity therewith; and cities and towns heretofore or hereafter organized, and all charters thereof framed and adopted

by authority of this Constitution, shall be subject to and controlled by general laws."

The making of provision for municipal improvements and work "in, upon, or about" the streets is peculiarly within the province of a city government, and has always been so treated and considered. There is nothing in the Constitution to indicate that it was the intention of its framers to make this a matter of *State* regulation; on the contrary, there are numerous provisions in the instrument showing that it was their purpose to vest in the local government the management and control of all matters of local interest.

In the absence of any provision of the Constitution (like that found in Section 1 of Article xxii.) apparently annulling such statutes, passed prior to the adoption of the present Constitution, as the Legislature is prohibited from passing under it, there would be no difficulty in construing the first sentence of Section 19, Article xi.

In the first place, it would be prospective because there would be nothing in the Constitution to make it retroactive. In the next place, inasmuch as no assessments can be levied except in pursuance of a *law*, the prohibition would, and could only, be given practical effect by holding that it restrained the Legislature from providing in the future for the making or doing in cities of any public improvements or street work (to be paid for by assessment) before the cost had been estimated and assessments therefor levied.

Section 19, of Article xi., relates to public improvements and street work "in cities." As we have seen, such improvements and work are peculiarly a matter of local interest, to be conducted by or under the direction of the city authorities, by virtue of powers conferred upon them by the charter or act of incorporation. Except, therefore, for Section 1, of Article xxii. (the section which, by nullifying laws inconsistent with the present Constitution, is said to nullify every Act passed before the adoption of the present Constitution which the Legislature under the present Constitution is prohibited from passing), it would be very plain that the first sentence of Section 19, of Article xi., simply prohibited a future Legislature from providing *in any general law for the organization of municipal corporations*, passed in accordance with

Section 6, of Article xi., that any public improvement could be made or street work done until after the cost had been estimated, and assessments therefor levied.

Thus, in order to give effect to both provisions, Sections 6 and 19, of Article xi., should be read together, and interpreted as saying: " Corporations for municipal purposes shall not be created by special laws; but the Legislature by general laws shall provide for the incorporation, organization, and classification of cities and towns; provided, that no such general laws shall authorize public improvements or street work to be made or done *before* the cost has been estimated and assessment levied therefor.   Cities and towns heretofore organized or incorporated *may become* organized under such laws whenever the majority of the electors voting at a general election shall so determine," etc.

The duty to provide that the cost of public improvements and street work, in cities, shall be estimated, and assessments levied, before any improvement is commenced, or work done, would be imposed upon the Legislature *as a portion* of its duty, by general laws, to provide for the incorporation, organization and classification of cities.

As a part is contained within the whole, if the first sentence of Section 6, Article xi., did not put an end to every special municipal corporation created prior to the adoption of the Constitution, the first sentence of Section 19 of the same Article, did not repeal or annul that portion of any special act, creating a municipal corporation, which provided for making public improvements or doing street work, within such corporation, *prior* to assessments for the cost thereof.

The "street law" of San Francisco is a part of the "Consolidation Act" or charter, of the city and county of San Francisco.   (Stats. 1871–2, p. 804.)   The charter of the city and county of San Francisco has continued in force since the adoption of the present Constitution, and will continue in force until a general law for the incorporation of cities and towns is passed, and a majority of the electors of the city and county shall determine to reorganize under such general law, or until a new special charter shall be formed as provided in Section 8.   (*Desmond* v. *Dunn*, 55 Cal. 242.)

· It necessarily follows, from what has been said, that the

"street law," a portion of the charter of the city and county of San Francisco, will continue in force until a general law shall be passed for the incorporation, organization, and classification of cities and towns, and until a majority of the electors in said city and county, voting at a general election, shall determine to reorganize, and the people of the city and county shall reorganize under such general law, or until freeholders are elected, etc., as by Section 8 provided.

In *Desmond* v. *Dunn* it was held, in view of the last sentence of Section 6, Article xi, that existing special city, and city and county, incorporations were taken out of, and were not subject to, the general provision of Section 1 of Article xxii., which made an end of all laws inconsistent with the present Constitution—either on the adoption of the Constitution, or on the first day of July, 1880—and that the charter of San Francisco was still a law, notwithstanding the first clause of Section 6, Article xi., declares that corporations for municipal purposes " shall not be created by special laws." As we have seen, the first sentence of Section 19 is to be read in connection with the first sentence of Section 6. Together they constitute a single mandate to the Legislature, by which it is commanded to pass general laws providing for the incorporation, etc., of cities and towns; such laws to provide that no street work, etc., should be done, prior to an estimate of its cost and assessments therefor. If a special charter granted before the new Constitution continues, notwithstanding the prohibition therein of special charters, it continues as a whole. If it continues in spite of one of the prohibitions found in Sections 6 and 19, it continues despite the other prohibition. Under the present Constitution, the Legislature can not grant a special municipal charter, but must pass general laws furnishing means for the formation and organization of municipal corporations; and such general laws must not permit street work to be done before assessments to pay for it are levied, but must provide for an estimate of the cost, and the levy of assessments therefor, before any work is done. The Constitution declares that every law inconsistent with the present Constitution shall go out of existence either on the first of January or the first of July, 1880. Yet, notwithstanding this general declaration, the special act char-

tering the City and County of San Francisco did *not* go out of existence, because the Constitution itself recognizes the continued existence of such special municipal corporations by providing that any of such may reorganize under the general laws to be passed. The "street law," of 1872, is a part of the special charter of San Francisco.

SHARPSTEIN, J., concurred.