## *Ex parte* McNaught.

No. 598.    Opinion Filed February 23, 1909.

(100 Pac. 27.)

1.    **CONSTITUTIONAL LAW—*Self-Executing* Provisions—Prosecution of Felony by Information.** Section 17, art. 2 (Bill of Rights), of the Constitution of Oklahoma    (Bunn's Ed. sec. 26), which provides that:    "No person shall be prosecuted criminally in courts of record for felony or misdemeanor otherwise than by presentment or indictment or by information.    No person shall be prosecuted for a felony by information without having had a preliminary examination before an examining magistrate, or having waived such preliminary examination"—is effective, and, as supplemented by the provisions of the common law in force in this jurisdiction (Wilson's Rev. & Ann. St. 1903, c. 66, art. 1, sec. 4200), and chapter 68, art. 5 (Cr. Proc.) Wilson's Rev. & Ann. St. 1903, secs. 5216-5303, supplies a sufficient rule by means of which the right given under said section may be exercised or enforced.

2.    **SAME—Adoption of Constitution—Operation as to Laws Previously in Force—Repugnant Statutes.** Section 17, art. 2 (Bill of Rights), of the Constitution (Bunn's Ed. sec. 26) being self-enforcing, at all events to the extent that the prohibition therein

declared became immediately effective, to the effect that prosecutions for felonies shall be had by means of indictment or information, section 5304, Wilson's Rev. & Ann. St. 1903, providing that no person shall be prosecuted for felony in the district courts except by indictment, being repugnant thereto, was not extended to, and did not remain in force in, the state of Oklahoma after its admission into the Union.

3. SAME—Due Process—Criminal Prosecutions — Preliminary Examination. Chapter 66, art. 1, sec. 4200 (Civ. Proc.) Wilson's Rev. & Ann. St. 1903, declares that the common law, as modified by constitutional and statutory law, judicial decisions, and the condition and wants of the people, shall remain in force in aid of the general statutes of Oklahoma and chapter 68, art. 5 (Cr. Proc.) Wilson's Rev. & Ann. St. 1903, secs. 5216-5303, makes provision for the examination, by a magistrate, of the accused, who is to be present and allowed a reasonable time and means to send for or procure counsel, and the right of cross-examination of the witnesses produced on the part of the prosecution, and of producing witnesses to be sworn and examined on his behalf. Such depositions taken on such examination and the statement of the defendant, in the event he elects to be sworn and testify or make a statement in his own behalf, must be kept by the magistrate or his clerk until they are turned over to the proper court, and must not be permitted to be inspected by any person except the judge of a court having jurisdiction of the offense, the prosecuting attorney and the defendant and his counsel. After hearing all the evidence or statements, if it appears to such magistrate that a public offense has been committed, and there is sufficient cause to believe the defendant guilty thereof, such accused shall be ordered to be held to answer such charge. Held, that a conviction upon an information for manslaughter in the first degree, and a sentence to the penitentiary for the term of his natural life on such verdict, are not illegal by virtue of the provision of the Constitution of the United States, which prohibits the states from depriving any person of life, liberty, or property without due process of law.

(Syllabus by the Court.)

Application by George W. McNaught for a writ of *habeas corpus.* Writ dismissed. Prisoner remanded.

On the 11th day of January, A. D. 1909, the relator filed his petition in this court, alleging that on the 28th day of September, A. D. 1908, at a regular term of the district court of Kingfisher county, state of Oklahoma, the county attorney of said county filed in said court a certain information in two counts, charging him with the crime of murder and manslaughter. That

thereafter, to wit, on the 29th day of September, A. D. 1908, re-
lator appeared in open court, and entered his plead of "not guilty"
to the charge under said information. That during said term of
court the relator was placed on trial, and on the 20th day of
October, A. D. 1908, the jury returned into open court its verdict
in said cause, in words and figures as follows, to wit: "We, the
jury in the above entitled cause, do upon our oaths find the defend-
ant, George W. McNaught, guilty of manslaughter in the first de-
gree, as charged in the second count of the information." That on
the 23d day of October, A. D. 1908, relator's motion for a new trial
was overruled by said court, and exceptions allowed, and sentence
was then and there pronounced against him upon the verdict of
the jury, sentencing him to imprisonment in the state prison for
the term of his natural life. Thereupon the relator was notified
by the district court of his right of appeal to the Criminal Court
of Appeals of the state of Oklahoma, and his bail fixed in the
sum of $15,000, and allowed 30 days from that date within which
to give said bond, with sufficient sureties, to be approved by the
clerk of said court, and he was further allowed 120 days from said
date within which to file petition in error in said Criminal Court of
Appeals, and was further allowed 90 days therefrom within which
to make and serve case-made for such appeal, with 10 days there-
after to the state of Oklahoma to suggest amendments thereto;
said case-made to be settled and signed upon 5 days' notice in
writing by either party thereto.

On the 7th day of December, A. D. 1908, relator applied to
the Criminal Court of Appeals of the state of Oklahoma for a
writ of *habeas corpus,* which was issued 'and made returnable be-
fore said court, and on the 11th day of January, A. D. 1909, said
court discharged said writ, and remanded relator to the custody
of the sheriff of Kingfisher county, state of Oklahoma. Thereup-
on said prisoner applied to this court for a writ of *habeas corpus.*

*F. P. Whistler* and *D. K. Cunningham,* for relator, contend
that the provision of the Constitution relating to prosecution  of
felonies by information is not  self-executing  to the extent of

authorizing such procedure without supplementary enactments by the Legislature: Const. art. 5, § 45; Schedule, art. 24, § 2; Wilson's Rev. & Ann. St. 1903, § 5304; *State v. Ah Jim* (Mont.) 23 Pac. 76; *In re Durbon* (Mont.) 25 Pac. 442.

*Charles West,* Atty. Gen., *W. C. Reeves,* Asst. Atty. Gen., *M. W. Hinch,* and *Bradley & Bradley,* for respondent.—The Oklahoma Constitution and laws in force provided a complete procedure for prosecution of felonies by information: *State v. Kyle,* 166 Mo. 287; *Davis v. Burke,* 179 U. S. 339; *People v. Hodge,* 55 Cal. 612; *State v. Babcock,* 19 Neb. 230; 8 Cyc. 754; 10 Cent Dig., title Const. Law, § 33.

WILLIAMS, J. (after stating the facts as above). The relator, having invoked the jurisdiction of the Criminal Court of appeals by writ of *habeas corpus,* and the prisoner being remanded by said court to the proper custody (*In re McNaught,* 1 Okla. Cr. 528, 99 Pac. 241), the jurisdiction of this court by such writ is now invoked. The question arises as to whether or not section 17, art. 2 (Bill of Rights), of the Constitution (Bunn's Ed. § 26), which provides that: "No person shall be prosecuted criminally in courts of record for felony or misdemeanor otherwise than by presentment or indictment or by information. No person shall be prosecuted for a felony by information without having had a preliminary examination before an examining magistrate, or having waived such preliminary examination"—is effective without legislation. Section 1, art. 14, of the Constitution of the United States provides:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Section 2 of said article also provides:

"Representatives shall be apportioned among the several states

according to their respective numbers, counting the whole number of persons in each state, excluding Indians not taxed," etc.

Mr. Cooley, in his admirable work (Cooley's Const. Lim. [7th Ed.] pp. 119, 120), says:

"The fifteenth amendment provides that 'the right of citizens of the United States to vote shall not be denied or abridged by the United States, or by any state, on account of race, color, or previous condition of servitude.' To this extent it is self-executing, and of its own force abolishes all distinctions in suffrage based on the particulars enumerated. But when it further provides that 'Congress shall have power to enforce this article by appropriate legislation,' it indicates the possibility that the rule may not be found sufficiently comprehensive or particular to protect fully this right to equal suffrage, and that legislation may be found necessary for that purpose."

Section 2, art. 12, of the Constitution of Kansas, 1859, provides:

"Dues from corporations shall be secured by individual liability of the stockholders to an additional amount equal to the stock owned by each stockholder; and such other means as shall be provided by law; but such individual liabilities shall not apply to railroad corporations, nor corporations for religious or charitable purposes."

In the case of *Whitman v. National Bank of Oxford,* 176 U. S. 562, 20 Sup. Ct. 477, 44 L. Ed. 590, Mr. Justice Brewer, in delivering the opinion of the court, said:

"This liability is for the dues of the corporation, and to an amount equal to the stock owned by him. The word 'dues' is one of general significance, and includes all contractual obligations. Whether broad enough to include liabilities for torts, either before or after judgment, is not a question before us, and upon it we express no opinion. The words 'shall be secured' are not merely directory to the Legislature to make provision for such liability, but of themselves declare it. To this extent the Constitution is self-executing. *Willis v. Mabon,* 48 Minn. 140, 50 N. W. 1110, 16 L. R. A. 281, 31 Am. St. Rep. 626. The discretion of the Legislature extends beyond this, as indicated by the clause 'and such other means as shall be provided by law.' A failure of the Legislature to create courts or prescribe modes of procedure

may, it is true, make ineffective this constitutional provision, but does not destroy the liability; nor is it created by the act of the Legislature prescribing the mode of its enforcement. This is the obvious meaning of the constitutional provision. 'The simplest and most obvious interpretation of a constitution, if in itself sensible, is the most likely to be that meant by the people in its adoption.' Lamar, Justice, in *Lake County v. Rollins,* 130 U. S. 662, 9 Sup Ct. 651, 652, 32 L. Ed. 1060."

A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed enforced; and it is not self-executing when it merely indicates principles without laying down rules by means of which those principles may be given the force of law. *State v. Scales,* 97 Pac. 587; Cooley's Const. Lim. (7th Ed.) p. 121.

In the case of *McDonald v. Patterson,* 54 Cal. 246, a portion of section 19, art. 11, of the Constitution of 1879, was under review. It is in words and figures as follows:

"No public work or improvement of any description whatsoever shall be done or made, in any city, in, upon, or about the streets thereof, or otherwise, the cost and expense of which is made chargeable or may be assessed upon private property by special assessment, unless an estimate of such cost and expense shall be made, and an assessment in proportion to the benefits on the property to be affected or benefited shall be levied, collected, and paid into the city treasury before such work or improvement shall be commenced, or any contract for letting or doing the same authorized or performed."

The court said:

"It is conceded that the cost and expense of the sewer to be constructed under the alleged contract is, by the terms of the statute under which this contract was awarded, chargeable, and must be assessed, upon private property by special assessment. Of this meaning of the statute we entertain no doubt. It is contended before us that the street law act of April 1, 1872 (see Stats. 1871-72, p. 804), is continued in force by the first section of article 22 of the Constitution, inasmuch as it is only inconsistent with provisions of the Constitution which require legislation to enforce them; that the act referred to is a system for the improvement of

the streets, and the intention manifested by the section of the Constitution referred to is that the system under this act of the Legislature shall be operative until the Legislature shall adopt another system under the Constitution, observing in such system the prohibition of the nineteenth section of article 11; that should the Legislature, however, fail to adopt such new system, the former one ceases to be of force on the 1st day of July, 1880. * * * The language of section 19, art. 11, is both mandatory and prohibitory in its character. It is clear and unambiguous. It is difficult to see that it could have been made stronger in its words of command and prohibtion. What words more vigorous or more appropriate to their manifest purpose could have been found in the whole compass of the English tongue we are at a loss to determine. It says, as plainly as words can disclose: 'We command that no such work as that referred to shall at any time be done, except as herein set down, and we prohibit any such work from being done at any time in any other way.' It is mandatory and prohibitory to every department of the government, and every officer of each department. By its very terms it is binding upon all, and goes into effect as soon as the Constitution becomes the organic law, as it is strongly prohibitory. We could not hold otherwise, without disregarding the plain meaning of words. * * * In our opinion this section [section 19, art. 11.] requires no legislation to enforce it; and, further, that the provisions of the act of April 1, 1872, authorizing the superintendent of streets, etc., of the city and county of San Francisco to execute the contract under consideration, ceased to be operative on the 1st day of January, 1880, as inconsistent with the section referred to."

In the case of *Donahue v. Graham,* 61 Cal. 276, the case of *McDonald v. Patterson, supra,* was followed. In the case of *Oakland Paving Co. v. Hilton,* 69 Cal. 483, 11 Pac. 3, the court again adhered to the rule announced in the case of *McDonald v. Patterson, supra,* and said:

"The constitutional provision is prohibitory in its language, and when that is the case no legislation is required to execute such provision. It is then self-executing—operating *proprio vigore.* The Constitution, in regard to contracts for street work presents in itself a complete rule in the particular mentioned. It requires no legislation to make it more complete. Every constitutional provision is self-executing to this extent: That everything done in violation of it is void. *Brien v. Williamson,* 7 How. (Miss.) 14.

The fifteenth amendment to the federal Constitution provides that 'the right of citizens of the United States to vote shall not be abridged by the United States, or by any state, on account of race, color, or previous condition of servitude.' This provision is self-executing to the extent that of its own force it abolishes all distinctions in suffrage based on the particulars mentioned (Cooley's Const. Lim. 133), whether these distinctions existed in a statute subsisting when the amendment went into operation, or whether the statute was subsequently enacted. The same may be said of the provision of the same Constitution that no state shall pass a law impairing the obligation of contract (article 1, § 10, Const. U. S.) as of all the matters prohibited by section 10, art. 1, just cited. See *Ewing v. Oroville Mining Co.,* 56 Cal. 649. Nor is this section 19 limited to prohibiting the Legislature from passing laws authorizing contracts in the future in violation of its provisions. It does this, but it does more. It operates on all contracts for street work, whether entered into under laws existing when the section went into effect, or under statutes subsequently enacted. Whenever a case arises presenting a contract of the character indicated, it operates to declare such contract void and of no effect. See *County of Los Angeles v. Lamb,* 61 Cal. 198. In fact it is the solemn declaration of the paramount organic law operating on all departments of the government, expressed in the clearest and strongest language of prohibition. No act can be done by any department contrary to its provisions. It is a law absolutely controlling the legislative, executive, and judicial departments of the government. It takes effect on laws already passed, as well as to those to be enacted in the future. * * * By the express declaration of the first section of article 22 of the Constitution all laws inconsistent with the Constitution ceased when that instrument began to operate. * * * "

Negative or prohibitory provisions in a Constitution require no legislation, as a rule, to carry the mere prohibition declared into effect. *American Union Tel. Co. v. Western Union Tel. Co.,* 67 Ala. 30, 42 Am. Rep. 90; *De Turk v. Commonwealth,* 129 Pa. 151, 18 Atl. 757, 5 L. R. A. 853, 15 Am. St. Rep. 705; *State v. Woodward,* 89 Ind. 110, 46 Am. Rep. 160; *Law v. People,* 87 Ill. 385; *Washingtonian Home of Chicago v. City of Chicago,* 157 Ill. 414, 41 N. E. 893, 27 L. R. A. 802; *Synod of Dakota v. South Dakota,* 2 S. D. 366, 50 N. W. 632, 14 L. R. A. 421; *Householder*

*v. Kansas City*. 83 Mo. 495; *Hickman v. Kansas City*, 120 Mo. 116, 25 S. W. 225, 23 L. R. A. 662, 41 Am. St. Rep. 684; *Ex parte Cain*, 20 Okla. 125, 93 Pac. 975.

The clause "no person shall be prosecuted criminally in courts of record for felony or misdemeanor otherwise than by presentment or indictment or by information," as said by Mr. Justice Brewer in *Whitman v. National Bank of Oxford, supra,* is not merely directory to the Legislature to make provision to that end, but of itself declares it. To this extent said provision of the Constitution is self-executing, and it also comes within the rule laid down by Mr. Cooley that a provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed or protected, or the duty imposed enforced. For by the common law, which is in force in this jurisdiction (Civ. Proc. c. 66, art. 1; Wilson's Rev. & Ann. St. 1903, § 4200), in aid of the general statutes of this state informations, as employed in this section having a common-law meaning (*Mayor of Mobile v. Stonewall Ins. Co.,* 53 Ala. 577; *Ex parte Roundtree,* 51 Ala. 44; *English v. State,* 31 Fla. 341, 12 South. 689; *State v. Barker,* 107 N. C. 917, 12 S. E. 115, 10 L. R. A. 50; *Flavell's Case,* 8 Watts. & Serg. [Pa.] 198; Cooley's Const. Lim. [7th Ed.] 94), were exhibited by the Attorney General (*Evans v. Willis,* 22 Okla. 310, 97 Pac. 1048), and with us the powers which in England were exercised by the Attorney General or Solicitor General are largely distributed among our county attorneys, whose office does not exist in England. The latter officers seem to be entitled, under the common law here in force, to prosecute by information. *State v. Kelm,* 79 Mo. 515; *Evans v. Willis, supra,; State v. Houston,* 21 Okla. 782, 97 Pac. 995. In the latter case the court said:

"It is the duty of the county attorney, except as otherwise provided, to prosecute and defend all actions, both civil and criminal, in the district and county courts in which the state is a party or interested."

In the case of *State v. Kelm, supra,* the court said:

"Bishop (section 144) says: 'In our states the criminal information should be deemed to be such, and such only, as in Eng-

land is presented by the Attorney or Solicitor General. This part of the English common law has plainly become common law with us. And as with us the powers which in England are exercised by the Attorney General and Solicitor General, are largely distributed among our district attorneys, whose office does not exist in England, the latter officers would seem to be entitled, under our common law, to prosecute by information as a right adhering to their office, and without leave of court.' Wharton lays down the same doctrine. Crim. Pl. & Pr. (8th Ed.) § 87."

The case of *State v. Kelm, supra,* was cited with approval in the case of *Evans v. Willis, supra.*

In the case of *State v. Kyle,* 166 Mo. 295, 65 S. W. 764 (56 L. R. A. 115), the court said:

" 'By the law of England informations by the Attorney General without the intervention of a grand jury were not allowed for capital crimes, nor for any felony, by which was understood any offense which at common law occasioned a total forfeiture of the offender's lands, or goods, or both. 4 Black. Com. 94, 95, 310. The question whether the prosecution must be by indictment, or might be by information, thus depended upon the consequences to the convict himself.' *Ex parte Wilson,* 114 U. S. 417, 5 Sup. Ct. 935, 29 L. Ed. 89; 1 Bishop's New Criminal Procedure, §§ 141, 142. And not until the amendment of section 12, art. 2, of the state Constitution, adopted at the general election held on November 8, 1900, by which it is provided that 'no person shall be prosecuted criminally for felony or misdemeanor otherwise than by indictment or information, which shall be concurrent remedies,' could a person be prosecuted criminally in this state for a felony otherwise than by indictment. * * * "

On page 303 the court further said:

"In the Kelm Case it was held that the term 'information,' as used in article 2, § 12, of the state Constitution of 1875 (Ann. St. 1906, p. 134), was to be understood in its common-law sense —that is, a criminal charge which at common law is presented by the Attorney General, or if that office is vacant, then by the Solicitor General of England, and in this state by the prosecuting attorneys of the respective counties who exercise the same powers as are exercised by the Attorney General or Solicitor General of England—that is, the power to present informations under their official oaths."

In the case of *State v. Pohl,* 170 Mo. 428, 70 S. W. 695, the case of *State v. Kyle, supra,* was approved. In the case of *State v. Vinso,* 171 Mo. 587, 71 S. W. 1037, the court said:

"In *State v. Kyle,* 166 Mo. 287, 65 S. W. 763, 56 L. R. A. 115, we held that 'information' as used in our Constitution, means the common-law information; and, in the absence of statutory provisions to the contrary, the common-law practice prevails, and we have seen amendments proper were allowed at common law as a matter of course at any time before trial. *State v. White,* 64 Vt. 372, 24 Atl. 250."

In the case of *State v. Bonner,* 178 Mo. 430, 77 S. W. 464, the court said:

"In *State v. Kyle,* 166 Mo. 287, 65 S. W. 763, 56 L. R. A. 115, the court *en banc* held that the amendment took effect from the time of the canvass of the vote on the amendment by the Secretary of State, and it was self-enforcing and operative from the data it took effect, to wit, December 19, 1900.   *   *   *   So that, while there was no statutory method of procedure provided when the Kyle Case arose, and for that reason the common-law form of information was adjudged sufficient when this prosecution was commenced, there was a specific statutory provision governing this method of prosecution, and one which no one will question the right of the Legislature to prescribe.  When our General Assembly took this subject in hand and directed the form of prosecutions by information, the common law on this subject no longer obtained.  It was the obvious purpose of the Legislature, in view of the amendment to the Constitution, to revise the whole subject-matter of the prosecutions by information, and to make article 3, c. 16, Rev. St. 1899 (Ann. St. 1906, p. 1485), uniform in its operation as to all grades of crime, and it must be held that the acts of March 13, 1901 (Laws 1901, pp. 138, 139 [Ann. St. 1906, § 2476]), operated to supersede the common law on the subject, and that they were intended to prescribe the only rules of procedure which should govern such prosecutions."

Again, the succeeding clause in said section, "no person shall be prosecuted for a felony by information without having had a preliminary examination before an examining magistrate, or having waived such preliminary examination," also appears to be mandatory, as well as prohibitory, and to declare a rule, and comes also not only within the rule declared by Mr. Justice Brewer in the case

of *Whitman v. National Bank of Oxford, supra,* but within the purview of the foregoing doctrine announced by Mr. Cooley.

The question then arises, the said section, prohibitory in its character, being self-enforcing to that extent, and supplying the rule that a felony might be prosecuted by information, as employed by the common law in force in this jurisdiction and modified by statute, and the rule announced in said section further requiring, as a condition precedent to such prosecution by information, that the accused should first have a preliminary examination before an examining magistrate or waive the same, whether or not the statutes of the state furnish procedure and machinery for such purpose. We think so. Chapter 68, art. 5 (Cr. Proc.) Wilson's Rev. & Ann. St. 1903, §§ 5216-5303, affords, in comprehensive detail, all the machinery for preliminary examinations before examining magistrates: The accused must be present; a reasonable time and means for sending for, or for his procuring, counsel; the right of cross-examination of witnesses produced by the prosecution, and of producing witnesses in his behalf; the testimony of the witnesses, including the statement or evidence of the defendant in the event he elects to be sworn and testify or make a statement, all to be reduced to writing or reported by the magistrate or his clerk, and to be retained by such magistrate or clerk until the same is turned over to the proper court, not to be open to inspection by any person whatever, except the judge of the court having jurisdiction of the offense, the prosecuting attorney, and the defendant and his counsel; the accused to be held by the magistrate to answer the accusation if he finds that a public offense has been committed and there is sufficient cause to believe the accused guilty thereof. Hence we find that the section of the Constitution under consideration, prohibitory in its character, is at all events self-enforcing to the extent that prosecutions may be had for felonies by means of information. The rule supplied requires two conditions: The existence of statutes or law providing for the charging of the offense by information, and for preliminary examination of

the accused before a magistrate. We find that all of these conditions are met by the laws now in force in the state.

But let us further consider said section 17 in the light of other sections of said article 2 (Bill of Rights) of the Constitution. Section 20 provides that the accused shall have the right to a speedy and public trial; shall be informed of the nature and cause of the accusation, and have a copy thereof and in capital cases, at least two days before the case is called for trial, shall be furnished with a list of the witnesses, with their postoffice addresses, that will be called in chief to prove the allegations of the indictment or information; section 19 that all prosecutions shall be carried on in the name and by the authority of the state of Oklahoma, and all indictments, informations, and complaints shall conclude "against the peace and dignity of the state"; section 18 that a grand jury shall be convened upon the order of a judge of a court having jurisdiction of felonies, upon his own motion, or such grand jury shall be ordered by such judge upon the filing of a petition therefor by 100 resident taxpayers of the county, with a proviso that the Legislature may make the calling of a grand jury compulsory. The foregoing are all mandatory and self-executing or self-enforcing in their nature, and evidently contemplate prosecutions of felonies by means of an information.

Reference might also be made to other provisions of like nature in said article: Section 22 providing that in all prosecutions for libel the same may be justified by proving the truth of the charge and good faith on the part of the accused; section 27 making it compulsory to give evidence, and providing for immunity; section 30 relating to the right of the people to be secure in their persons, houses, papers, and effects against all unreasonable searches and seizures, and restraining the issuance of warrants except upon probable cause supported by oath or affirmation, describing, as particularly as may be, the place to be searched and the person or thing to be seized. These provisions may be considered together for the purpose of ascertaining the intent of the framers and those ratifying the Constitution. Practically all of said sec-

tions, under the rules herein referred to, are self-enforcing; and, when we consider the fact that it is within the discretion of the district judge to call a grand jury, unless the taxpayers, 100 in number, petition him therefor, in connection with the proviso that the Legislature may make it compulsory on him to do so, the strong presumption arises that it was the intention in framing this section that the expense incident to a grand jury and the investigations thereby might be obviated, except when within the discretion of the presiding judge it was necessary, unless the Legislature in its sovereign discretion might determine otherwise.

But it is suggested that section 5304, Wilson's Rev. & Ann. St. 1903, provides that no person shall be prosecuted for a felony in the district courts except by an indictment, and for that reason prosecutions for felonies by information are not permissible as long as said section stands.    Section 2 of the schedule to the Constitution provides that "all laws in force in the territory of Oklahoma at the time of the admission of the state into the Union, which are not repugnant to this Constitution, and which are not locally inapplicable, shall be extended to and remain in force in the state of Oklahoma until they expire by their own limitation or are altered or repealed by law." If said section 5304 is repugnant to section 17, art. 2, of the Constitution, it follows that the same was not extended to, and did not remain in force in the state after its admission into the Union.

The question might further arise, though it is not now necessary to be determined for the proper disposition of this case, as to whether or not section 5306 (Cr. Proc. c. 68, art. 6, § 170), Wilson's Rev. & Ann. St. 1903, which provides that:   "The county attorney shall subscribe his name to informations filed in the probate or district court and indorse thereon the names of the witnesses known to him at the time of filing the same.   He shall also indorse thereon the names of such other witnesses as may thereafter become known to him, at such time before the trial as the court may by rule prescribe.   All informations shall be verified by the oath of the prosecuting attorney, complainant or some other

person: Provided, that when an information in any case is verified by the county attorney, it shall be sufficient if the verification be upon information and belief"—was extended to and remains in force in this state until altered or repealed by law, by virtue of section 2 of the schedule to the Constitution. Such would be the case, unless it is repugnant to the provisions of section 20, art. 2, to the effect that the accused "shall be informed of the nature and cause of the accusation against him and have a copy thereof, and be confronted with the witnesses against him, and have compulsory process for obtaining witnesses in his behalf. He shall have the right to be heard by himself and counsel; and in capital cases, at least two days before the case is called for trial, he shall be furnished with a list of the witnesses that will be called in chief to prove the allegations of the indictment or information, together with their post-office addresses." If section 5306 *supra,* was repugnant to said section, it was not in force after the admission of the state into the Union; otherwise it did remain in force, and the common law as to informations would be modified to the extent that said section 5306 may conflict therewith. Under the common law it was not necessary that an information should be verified by the Attorney General or Solicitor General. *Evans v. Willis,* 22 Okla. 310, 97 Pac. 1048; *State v. Pohl,* 170 Mo. 428, 70 S. W. 695. Said section 5306 does not seem, though we do not now pass thereon, to be repugnant to the provisions of said section 20, art. 2, but supplementary thereto; nor does it appear to have operated to supersede the common law other than to modify same in regard to informations. For said section does not cover the whole subject-matter of prosecution by information as is provided for by section 17, art. 2, of the Constitution. Having reached the conclusion that said section 17, art. 2, is self-enforcing, at least to the extent that it immediately became effective as to the prohibition declared therein, which is to the effect that prosecutions for felonies shall be had by means of indictment or information, said section 5304, *supra,* is clearly repugnant thereto. *Compbell et al., v State ex rel.*

*Brett, ante,* p. 109, 99 Pac. 788; *Arie v. State, ante,* p. 166, 99 Pac. 778; *McDonald v. Patterson, supra; Donahue v. Graham, supra; Oakland Paving Co. v. Hilton, supra; Cass v. Dillon,* 2 Ohio St. 608; *Ohio ex rel. Evans v. Dudley,* 1 Ohio St. 437; *Washingtonian Home of Chicago v. City of Chicago, supra; Brien v. Williamson,* 7 How. (Miss.) 14.

There can be no question but that where it is provided in a state Constitution, in such a way that it is self-executing or made effectual by supplementary legislation, that a citizen may be tried for a felony by information, such citizen is not deprived of any rights under the federal Constitution. *Lybarger v. State,* 2 Wash. 555, 27 Pac. 449, 1029; *Hurtado v. California,* 110 U. S. 516, 4 Sup. Ct. 292, 28 L. Ed. 232; *Barron v. Mayor, etc., of Baltimore,* 7 Peters, 243, 8 L. Ed. 672; *Twitchell v. Pennsylvania,* 7 Wall. 321, 19 L. Ed. 223; *Fox v. Ohio,* 5 How. 432, 12 L. Ed. 213; *McNulty v. California,* 149 U. S. 645, 13 Sup. Ct. 959, 37 L. Ed. 882.

No question will be considered on this application to this court in this case other than that as to the construction of the provisions of section 17, art. 2, of the Constitution, and as to whether or not relator may be prosecuted in the district court of Kingfisher county for a felony by means of an information, and, being so prosecuted, whether or not he was deprived by the state of Oklahoma of any rights under the federal Constitution, such questions pertaining to the jurisdiction of the district court of Kingfisher county. *Ex parte Patman,* 21 Okla. 846, 95 Pac. 622, and other authorities cited in *Re McNaught, supra.*

Having determined all these questions against the relator, the writ of *habeas corpus* is hereby discharged, and the prisoner remanded to the custody of the sheriff of said county.

Writ dismissed, and prisoner remanded.

All the Justices concur.